**UNITED STATES of America,**
**Appellant,**

v.

**Anthony R. COLOMBO and Joseph**
**Colombo, Jr., Defendants,**
**Appellees.**

**No. 88–1010.**

United States Court of Appeals,
First Circuit.

Heard May 3, 1988.
Decided July 18, 1988.

Alan Hechtkopf, Tax Div., Dept. of Justice, with whom William S. Rose, Jr., Asst. Atty. Gen., Gary R. Allen and Robert E. Lindsay, Tax Div., Dept. of Justice, Washington, D.C., and Richard V. Wiebusch, U.S. Atty., Concord, N.H., were on brief for appellant.

Glenn G. Geiger, Jr., by appointment of the court, with whom Geiger & Heiser, Penacook, N.H., was on brief for defendant, appellee Anthony R. Colombo.

Patrick J. Devine with whom Law Offices of Allison & Devine, Plaistow, N.H., was on brief for defendant, appellee Joseph Colombo, Jr.

Before COFFIN and TORRUELLA, Circuit Judges, and FUSTE,* District Judge.

TORRUELLA, Circuit Judge.

This appeal requires us to pass upon appellees' *constitutional* right to a speedy trial as guaranteed by the Sixth Amendment.[1] The facts of this case reveal delays in bringing appellees to trial caused in large part by the government's mismanagement of appellees' indictment and other related pre-trial matters. Because the district court failed to properly identify and weigh the various relevant factors as set forth in *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2191–92, 33 L.Ed.2d 101 (1972), we find that the district court abused its discretion in dismissing the indictment.

## Background Facts

The alleged "buy a church" scheme

The following are the facts alleged by the government in this case.

Appellees Anthony R. Colombo and Joseph Colombo, Jr. are brothers, the first residing in Merrimack, New Hampshire, and the second in Lowell, Massachusetts. In October, 1979 they obtained the exclusive right for New England to sell "ministries" in an organization called the Life Science Church (LSC), which was founded in 1976 in San Diego, California. Through LSC, individuals could avoid tax liability by taking a "vow of poverty" and thereafter not paying income taxes, or by deducting as charitable contributions up to 50% of their contributions to LSC.

Under the first plan, the purchaser of a "ministry" was advised to take the "vow" and assign himself to a church, ideally the home of the "minister." The "minister" could then name his or her spouse as trustee, and divert the contributions to the trustee. However, the monies would continue to be controlled by the "minister" as "church accounts," allowing the "minister" to withdraw the funds to pay the "minister's" living expenses as non-taxable parsonage allowances.

Under the alternative plan the purchasers were advised to deduct 50% of their gross income as contributions to LSC "churches." An accounting procedure similar to that used in the "vow" situation was also followed by the "church" for payment of funds to the "ministers" for claimed personal expenses.

Anthony R. Colombo himself took the "vow" and avoided the payment of income taxes. The accounts involved included savings as well as stock brokerage accounts. Furthermore, he failed to report substantial income from the sale of LSC "ministries." Joseph Colombo purchased a ministry under the alternate plan. Both Colombo "ministers" withdrew sums totalling $210,066 in cash from an LSC account at Indian Head National Bank in Nashua, New Hampshire, and used the money to purchase personal items, including a $32,-500 automobile.

The New York indictment

On June 25, 1984, an indictment was returned against appellees in the Southern District of New York charging that from October 1979 to June 1984, through the use of the LSC scheme, they had conspired to defraud the United States by impeding, impairing, obstructing and defeating the functions of the IRS in the ascertainment, computation, assessment and collection of the income taxes owed by themselves and other "ministers." There were also two individual counts against each brother charging substantive violations of attempting to evade income taxes in 1980 and 1981.

Thereafter motions to dismiss were filed by the Colombos alleging lack of jurisdiction by the grand jury to indict on the

---

* Of the District of Puerto Rico, sitting by designation.

1. U.S. Const. amend. VI:
 In all criminal prosecution, the accused shall enjoy the right to a speedy and public trial. . . .

The parties did not allege, nor did the district court rule on, matters related to the Speedy Trial Act. 18 U.S.C. §§ 3161 *et seq.* This appeal is thus concerned *only* with allegations under the Sixth Amendment.

substantive offenses committed outside New York and also requesting that the conspiracy count be transfered to the District of Massachusetts. On August 9, 1984, the court ordered the cases transferred *in toto* to the District of Massachusetts, without ruling on the merits of the motions to dismiss.

The proceedings in Massachusetts

The case was docketed in the District of Massachusetts on August 20, 1984. After appointment of counsel for both appellees, the case was set for trial on November 13, 1984. On October 31, however, at the request of Anthony's counsel, the trial was continued to January 2, 1985, and thereafter, as a result of a similar request, another continuance was granted on February 1, 1985.

On motion of appellees the court then dismissed both substantive charges against Joseph and one substantive charge against Anthony on the ground that the New York grand jury lacked jurisdiction over these allegations. The government's motion to re-transfer the remaining counts back to the Southern District of New York was denied by the court on April 9, 1985.

On December 4, 1985, the court granted the government leave to dismiss "the indictment ... without prejudice to reprosecution in a judicial district having jurisdiction over all offenses originally charged in the indictment." Appellees thereafter moved for reconsideration of the dismissal without prejudice, claiming that the government was improperly seeking a more favorable forum in order to pretermit resolution of a pending Motion to Dismiss for Misuse of Process, and that the time allowed by the Speedy Trial Act has elapsed. The court denied the motion on December 3, 1985.[2]

The New Hampshire proceedings

On April 9, 1987, the grand jury for the District of New Hampshire returned an indictment against appellees. The first count of the indictment charged that from October 23, 1979 until June 25, 1984 in the

Districts of New Hampshire and Massachusetts appellees conspired to defraud the United States through the use of the LSC schemes. Counts II and III of the indictment charged Anthony R. Colombo with substantive criminal violations of the income tax laws in the District of New Hampshire, as did Counts IV and V against Joseph Colombo, Jr. All these charges were substantially the same as those made in the New York indictments.

On April 9 and May 20, 1987, counsel were appointed for Joseph and Anthony respectively, and trial commencement was set for June 23, 1987. On May 28, 1987, however, Anthony moved for a continuance of the trial date, which was granted initially to July 7, 1987. The continuance was then extended upon Anthony's motion to October 20, 1987.

On September 4, 1987, the appellees filed the motion to dismiss for lack of a speedy trial in violation of the Sixth Amendment. The district court granted this motion and dismissed the indictment on October 21, 1987. The court ruled that there was "uncontroverted evidence that the government was aware of possible tax evasion by defendants almost six years before the indictments" were filed in New Hampshire, that appellees had been represented by different counsel in New York, Massachusetts and New Hampshire, with "[e]ach successive new counsel ... incurr[ing] more onerous duties, more stale facts and inexorable pressure by the government and the courts to conform with the speedy trial act," and that "[t]he record discloses serious prejudice to the defendants." The court did not specify in any manner the nature of this "serious prejudice."

The government appeals from this dismissal.

### The Constitutional Right to a Speedy Trial

The Sixth Amendment right to a speedy trial, though important, is a fairly limited right, with a fairly specific purpose:

---

**2.** This order was not appealed. There is at least some question in our minds whether this is an appealable final order which was not appealed. The government, however, has not made such a

claim, nor have the parties briefed this issue. In view of our holding, we note the issue, without ruling upon it.

The Sixth Amendment right to a speedy trial is ... not primarily intended to prevent prejudice to the defense caused by passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations. The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.

*United States v. MacDonald,* 456 U.S. 1, 8 (1981).

This right attaches upon an individual's indictment, arrest or official accusation. *United States v. MacDonald,* 456 U.S. 1, 6, 102 S.Ct. 1497, 1500–01, 71 L.Ed.2d 696 (1981); *United States v. Marion,* 404 U.S. 307, 313, 92 S.Ct. 455, 459–60, 30 L.Ed.2d 468 (1971). It is well established that in considering whether this right has been violated the court should consider four factors: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of the right to a speedy trial; and (4) the prejudice caused to the defendant as a result of the delay. *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2191–92, 33 L.Ed.2d 101 (1972); *United States v. Johnson,* 579 F.2d 122, 123 (1st Cir.1978).

Except for a threshold showing of presumptively prejudicial delay, the court must

"regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant."

*Barker,* 407 U.S. at 533, 92 S.Ct. at 2193. In other words, the presence or absence of any one of them does not determine the result, we must still weigh all of the factors collectively before deciding whether a defendant's right to a speedy trial has been violated. Our first task, however, is to determine the length of the relevant delay, because "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker v. Wingo,* 407 U.S. at 530, 92 S.Ct. at 2192. This task is somewhat complicated here by the existence of two indictments and a lengthy delay between the two. We first will decide which of those periods is relevant to the speedy trial calculus.

Sixth Amendment speedy trial mathematics [3]

 The courts have implicitly assumed that if an indictment is dismissed on motion of a defendant, and the defendant is subsequently reindicted for the same offense, only the delay in prosecution of the second indictment is relevant for Sixth Amendment speedy trial purposes. *See United States v. Hernández,* 724 F.2d 904, 906 (11th Cir.1984); *United States v. Samples,* 713 F.2d 298, 301 (7th Cir.1983). Not only is this consistent with the judgment embodied in the Speedy Trial Act, *see* 18 U.S.C. § 3161(d)(1), *United States v. Krynicki,* 689 F.2d 289, 292–95 (1st Cir.1982), but it makes sense. Once a defendant manages to have all charges against him dismissed, the government must, against its will, re-commence the prosecution from square one, a time consuming process. The defendant's efforts, therefore, are the main reason for the delay.

When the government voluntarily dismisses charges, however, a different consideration comes into play. Again, the Speedy Trial Act recognizes this, and excludes only the time between indictments, and not the time during the pendency of the first indictment. *See* 18 U.S.C. § 3161(h)(6); *Krynicki,* 689 F.2d at 294, n. 6. This is a sound approach, and is equally applicable in Sixth Amendment analysis. Were it otherwise, the government would

---

**3.** It should be noted that we are not called upon to pass on issues related to delays in the *institution* of a prosecution. Those matters would involve due process concerns under the Fifth Amendment, *see United States v. Marion,* 404 U.S. at 324–26, 92 S.Ct. at 465–66, and have neither been claimed by appellees nor passed upon by the district court.

be able to nullify a defendant's speedy trial right by the simple expedient of dismissing and reindicting whenever speedy trial time was running out on its prosecution.

At the same time, however, the Sixth Amendment does not require counting the time between indictments. As the Supreme Court pointed out in *MacDonald,* while a person under investigation certainly suffers from many of the restraints on liberty which the Sixth Amendment seeks to prevent, *see MacDonald,* 456 U.S. at 8–9, 102 S.Ct. at 1502–03, that amendment simply does not apply to one not formally accused, *id.* at 8, 102 S.Ct. at 1502. Since a person who is "between indictments" is no longer the subject of public accusation, we do not count the time between indictments in assessing the length of time one has been "accused."

We realize that the *MacDonald* court apparently left open precisely the question raised by this case. It distinguished *United States v. Avalos,* 541 F.2d 1100 (5th Cir.1976) (counting all the time since first indictment), because of the "unusual" circumstance in *Avalos* that "the government dismissed charges pending in one district in order to prosecute the defendants on those same charges in another district." *MacDonald,* 456 U.S. at 8, n. 7, 102 S.Ct. at 1501, n. 7. That distinction, however, flies in the face of the opinion itself: *MacDonald* holds that the speedy trial right simply does not attach to one not formally accused. In addition, MacDonald was as certain of his continuing and public prosecution, *see id.* at 12–14, 18–19, 102 S.Ct. at 1504–05, 1507–08 (Marshall, J., *dissent-*

*ing* ), as is an individual, such as the Colombos, who believes he will be reindicted in a different district.[4]

■ Our calculus of speedy trial time in this case therefore includes the time of the pendency of the first indictment (18 months), and that of the second (6½ months), at least for those counts dismissed in Massachusetts at the government's behest. We find that this 24 month period is long enough, under the circumstances of this case, to be "presumptively prejudicial." *Barker v. Wingo,* 407 U.S. at 530–31, 92 S.Ct. at 2191–92. What follows, therefore, is an analysis of the four factors set forth in *Barker.*

The Barker v. Wingo factors:

a) *Length of the delay*

■ As we have seen, the length of the delay is both the trigger for analysis and one of the factors to be considered. In this case the length of the delay weighs in favor of the defendants. A delay of two years for a case of this complexity, where the government was aware of most of the facts beforehand, is excessive. Unfortunately for the appellees, however, their case founders on the next three prongs of the analysis.

b) *The reasons for the delay*

The delay was caused by both inexcusable negligence on the part of the government, and the ordinary demands of defendants in the interest of preparing a defense. Much of the elapsed time passed as a result of the government's failure to check the

---

4. Our own cases have not directly stated that the time elapsed during the pendency of the first indictment should be counted. In *United States v. Marler,* 756 F.2d 206, 209–12 (1st Cir.1985), however, we held that time elapsed under a previous state indictment should not be counted because the second indictment was brought by the federal government, a separate sovereign. Obviously, if we had held there that the time of the first indictment was not countable anyway, we would not have needed to articulate a "separate sovereign" exception. While we are reluctant to assign precedential value to a choice of alternate dispositive theories, the silent assumption there to some extent can be seen to foreshadow our holding today.

Other circuits, without discussion, have omitted the time of a first indictment from their speedy trial tally. *See United States v. Moran,* 759 F.2d 777, 783 (9th Cir.1985); *United States v. Pajari,* 715 F.2d 1378, 1384 (6th Cir.1983). Apparently, these cases misplaced reliance on *MacDonald's* language excluding time "after the government, acting in good faith, formally drops charges." *Id.,* 456 U.S. at 7, 102 S.Ct. at 1501. That language was only meant to exclude the time between indictments, not the time of a first indictment. To the extent these cases exclude the time of the first indictment from speedy trial reckoning, we reject them.

jurisdictional bases for its actions, and the consequent changes in appointed counsel. *See ante* at 22. The rest, however, was spent while the courts considered the defendants' motions.

Since government negligence is a more "neutral" reason than bad faith or an attempt to gain a tactical advantage over the defense, time elapsed because of negligence should be "weighted less heavily" than if it were willfully sought by the government. *Barker v. Wingo*, 407 U.S. at 531, 92 S.Ct. at 2192.

Both Joseph and Anthony Colombo make the unsubstantiated contention that the government dismissed the indictment in Massachusetts and reindicted the appellees in New Hampshire, "to gain tactical advantage" and for the purpose of "bad faith forum shopping." *See* Brief of Appellee Joseph Colombo, Jr. at p. 11 & n. 11; Brief of appellee Anthony R. Colombo at pp. 11 & 13 n. 3. This "tactical advantage" is apparently a reference to a discovery ruling, allegedly adverse to the government, by the Massachusetts court on August 1, 1985 which was later modified by that court before the dismissal without prejudice. The New Hampshire court has not yet had the occasion to rule on this matter. We are thus left to speculate whether the government will fare any better in the latter district if such a ruling is requested and made. More on point, however, none of the courts viewing this case have found that the government has acted in bad faith or has attempted to gain a tactical advantage by any of its actions. *Cf. United States v. Levasseur*, 846 F.2d 786 (1st Cir.1988) (principle of judicial estoppel not applicable to bar government from proceeding against defendants in subsequent action when it has not played "fast and loose" with the courts to gain tactical advantage). In fact the Massachusetts court denied appellees' motions for reconsideration in which such allegations were specifically made. We refuse to find bad faith from a record barren of indications that any in fact existed.

c) *The lack of prejudice*

In considering the prejudice factor, the *Barker* Court stated as follows:

Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.

*Id.* 407 U.S. at 532, 92 S.Ct. at 2193 (citations omitted).

Our search of the record fails to reveal that the delay in bringing appellees to trial caused them any prejudice rising to the level of a constitutional deprivation of their right to a speedy trial. Appellees concede that there was no pretrial incarceration, oppressive or otherwise, thus eliminating the first *Barker* consideration bearing on prejudice. *Barker*, 407 U.S. at 532, 92 S.Ct. at 2192–93.

As to the "minimiz[ation] [of] anxiety and concern of the accused," *id.*, there is no showing that appellees suffered any undue pressures in this respect. We emphasize that the standard here is minimization, not necessarily elimination of the natural consequences of an indictment. *See United States v. Mitchell*, 723 F.2d 1040, 1049–50 (1st Cir.1983) (while "this type of prejudice is not to be brushed off lightly," it is not by itself enough to support a claim of denial of the right to a speedy trial), *cf. United States v. Ciammitti*, 720 F.2d 927, 930–31 (6th Cir.1983) (similar claim insufficient in Fed.R.Crim.P. 48(b) context), *cert. denied*, 466 U.S. 970, 104 S.Ct. 2342, 80 L.Ed.2d 816 (1983).

Lastly, although appellee Joseph Colombo, Jr. claims "difficulty in preparing his defense by keeping track of a myriad of

necessary witnesses to his case," *see* Brief at p. 13–14, we are not supplied with any specific references in the record, nor have we found any ourselves, to witnesses or evidence which may have become unavailable because of the delays in this case. *United States v. Golden,* 436 F.2d 941 (6th Cir.1971) (claimed impairment of defense because of delay must be specific and not by mere conjecture), *cert. denied,* 404 U.S. 910, 92 S.Ct. 236, 30 L.Ed.2d 183 (1971); *United States v. Edwards,* 577 F.2d 883, 889 (5th Cir.1978) (vague assertions of faded memory will not suffice), *cert. denied,* 439 U.S. 968, 99 S.Ct. 458, 58 L.Ed.2d 427 (1978); *United States v. Finkelstein,* 526 F.2d 517, 526 (2d Cir.1975) (same), *cert. denied,* 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 205 (1976); *Hodges v. United States,* 408 F.2d 543, 550 (8th Cir.1969) (failure to claim that specific evidence had disappeared or been lost defeats speedy trial claim).

Neither the specific types of prejudice mentioned in *Barker* nor any others have been brought to our attention. The passage of time alone, without a significant deprivation of liberty or impairment of the ability to defend, is not conclusive evidence of prejudice. We hold, therefore, that no prejudice can be found in the record before us.

### d) *The assertion of the right*

The defendants claimed for the first time at the end of the 18 months elapsed under the first indictment that the Speedy Trial Act time had run. After that motion was successful, however, and upon reindictment in New Hampshire, the appellants did not re-assert their desire for a speedy trial until approximately five months later. While the delay in New Hampshire might be attributed to new counsel's need to become familiar with the record, the 18 month wait in New York and Massachusetts demonstrates less than zeal in the pursuit of an early trial. It appears, in fact, that the defendants were content to wait until assertion of the right became a possibly viable way to preclude consideration of the merits of their case.

As the Supreme Court pointed out, "[t]he defendant's assertion of his speedy trial right ... is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. [The Court] emphasize[d] that failure to assert the right will make it difficult for a defendant to prove he was denied a speedy trial." *Barker v. Wingo,* 407 U.S. at 531–32, 92 S.Ct. at 2192–93. Non-assertion of the right does not necessarily excuse government neglect. *Id.* at 536, 92 S.Ct. at 2194–95. At the same time, this record suggests that the Colombos did not want a speedy trial until their right to a speedy trial became a possible means by which to obtain dismissal of the charges against them.

### *Conclusion*

In the absence of demonstrable prejudice, and in view of the appellant's own lack of enthusiasm for the right which they now assert, especially in a case where there was no bad faith on the part of the government, the record does not support a finding of denial of the Colombos' speedy trial right. Since the district court failed to properly identify and balance the factors relevant to its determination, we find that it abused its discretion and therefore we *reverse* its order of dismissal. The case is *remanded* for action consistent with this opinion.