**UNITED STATES, Appellee,**

v.

**Guillermo SCANTLEBERRY–FRANK, a/k/a Gillermo Scantlebrury, a/k/a Guillermo Scantlebury, a/k/a Guillermo Scantleberry, Defendant, Appellant.**

No. 97–2392.

United States Court of Appeals, First Circuit.

Heard July 28, 1998.

Decided Oct. 23, 1998.

Tina Schneider, by appointment of the Court, on brief, for appellant.

Antoinette E.M. Leoney, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, was on brief, for appellee.

Before TORRUELLA, Chief Judge, WELLFORD,* Senior Circuit Judge, and LYNCH, Circuit Judge.

TORRUELLA, Chief Judge.

Defendant-appellant, Guillermo Scantleberry–Frank ("Scantleberry"), appeals his conviction of illegal reentry into the United States after deportation, in violation of 8 U.S.C. § 1326. On appeal, Scantleberry argues: (1) that his rights under the Speedy Trial Act, 18 U.S.C. § 3161, were violated; and (2) that there was insufficient evidence to support his conviction. For the following reasons, we affirm.

## BACKGROUND

In November 1979, Scantleberry, a citizen of Panama, illegally entered the United States at New York City. On June 4, 1987, the United States Immigration and Naturalization Service ("INS") found Scantleberry at the Massachusetts Correctional Institution at Concord where he was serving a state sentence on unrelated charges. On November 2, 1992, Scantleberry was deported to Panama after completing his sentence in the Massachusetts prison system. Before Scantleberry boarded the plane to Panama, an INS Deportation Officer fingerprinted his right thumb.

On January 7, 1997, INS Deportation Officers and Massachusetts State Police Officers found Scantleberry in Worcester, and placed him under arrest for illegally re-entering the country after deportation. After he was taken into custody, the INS took Scantleberry's fingerprints, for comparison with the right thumbprint taken prior to Scantleberry's deportation to Panama. Expert testimony submitted at trial determined that the thumbprints were identical.

* Of the Sixth Circuit, sitting by designation.

On January 15, 1997, Scantleberry was indicted for illegal re-entry into the United States after deportation. On January 17, 1997, he appeared in court for his initial appearance and was arraigned on the indictment. On January 21, 1997, the magistrate judge issued an order of excludable time pursuant to the Speedy Trial Act commencing on January 17, 1997—the date of the defendant's initial appearance and arraignment—and concluding on February 21, 1997—the date by which the government was directed to file its responses to any pretrial discovery motions. Additionally, the magistrate judge issued a preliminary status report to the district court, stating that, assuming no further allowances for excludable time, this case had to be tried on or before May 2, 1997.

On April 3, 1997, the district court held a pretrial/status conference at which the possibility of a negotiated plea was discussed. In response to the court's attempt to set a trial date, the government stated that it was unavailable between April 13 and April 27, and on April 29. Defendant's counsel stated that she was unavailable between April 29 and May 12. Based on these representations, the district court set the trial date for May 12, 1997.

On May 8, 1997, the defendant filed a motion to dismiss the indictment on the ground that his trial had not commenced within the time required under the Speedy Trial Act, and on May 19, 1997, the government filed a motion in opposition. On May 9, 1997, the defendant's counsel filed a motion for a continuance of the May 12 trial date on the ground that she was engaged in trial on another unrelated matter. On May 22, 1997, the district court issued written findings pursuant to a Speedy Trial Order, and denied the defendant's motion to dismiss the indictment without a hearing. In its May 22, 1997 Speedy Trial Order the district court reset the trial for June 16, 1997, and excluded the period from April 3, 1997 until May 22, 1997. On June 16, 1997, the day Scantleberry's trial commenced, the defendant filed a motion for reconsideration of the motion to dismiss and

a second motion to dismiss the indictment under the Speedy Trial Act. The district court orally denied both motions, and entered a further order excluding the time from May 12, 1997, until June 16, 1997.

## ANALYSIS

### I. *Speedy Trial Act Claim*

The Speedy Trial Act ("STA"), 18 U.S.C. § 3161, is designed "to protect a defendant's constitutional right to a speedy ... trial, and to serve the public interest in bringing prompt criminal proceedings." *United States v. Santiago–Becerril*, 130 F.3d 11, 15 (1st Cir.1997) (quoting *United States v. Saltzman*, 984 F.2d 1087, 1090 (10th Cir. 1993)). The STA provides that the government must bring a criminal defendant to trial no more than seventy days after the later of the filing date of the information or indictment, or the date on which the criminal defendant first appears before a judicial officer of a court in which the charge is pending. *See id.* (citing 18 U.S.C. § 3161(c)(1)). In calculating the seventy days, the STA excludes certain time periods. *See* 18 U.S.C. § 3161(h)(1)-(9); *see also Santiago–Becerril*, 130 F.3d at 15. If a criminal indictment is not brought to trial within the seventy-day time limit imposed by § 3161(c)(1), as extended by operation of § 3161(h)(1)-(9), the penalty provisions of the STA mandate that "the information or indictment shall be dismissed on motion of the defendant." 18 U.S.C. § 3162(a)(2).

Scantleberry argues that the district court erred in denying his motion to dismiss the indictment. He contends that the period between April 3 (the date of the pretrial conference) and May 8 (the date the motion to dismiss was filed) was improperly excluded from the speedy trial calculus. As a result, the delay in his being brought to trial added up to more than the number of statutorily allowable days. In response, the government asserts that, at worst, only sixty-five non-excludable days passed before Scantleberry was brought to trial.

█ We find no error in the district court's refusal to dismiss the superseding indictment. This Court reviews the disposition of a STA issue for clear error as to factual findings and *de novo* as to legal rulings. *See Santiago–Becerril,* 130 F.3d at 15; *United States v. Rodriguez,* 63 F.3d 1159, 1162 (1st Cir.1995). We conclude that fewer than seventy non-excludable days elapsed before Scantleberry was brought to trial.

### A. *April 3, 1997 to May 8, 1997*

█ In holding that the period from April 3 to May 8 was excludable from the speedy trial calculus under § 3161(h)(1), the district court stated in its Speedy Trial Order that at the April 3 pretrial/status conference, "counsel for Scantleberry announced on several occasions that Scantleberry would plead guilty and that a trial would be unnecessary." As a result, the district court excluded the time period commencing from the date on which Scantleberry allegedly informed the court of his intention to plead guilty—April 3—until the date he indicated that he was not going to plead guilty—May 8—the date on which he filed the motion to dismiss.

Scantleberry argues that the district court erred in excluding that time period from the speedy trial calculus. He asserts that the transcript of the conference clearly indicates that his counsel's only intention was to discuss the government's offer of a plea bargain. Scantleberry cites the following exchange between the district court and his counsel:

THE COURT: We'll hope that the matter is·resolved. If it isn't, we'll see you on the 12th of May.

[COUNSEL FOR SCANTLEBERRY]:

We will notify the Court if we reach an agreement.

THE COURT: Yes. You can get a date for a Rule 11 Hearing if that's necessary.

April 3, 1997 Status Conference, Tr. 6–7. In Scantleberry's view, only the possibility, and not the certainty of a change of plea was presented to the district court.

The government argues that the time was properly excluded by the district court because Scantleberry's counsel created the expectation that there would be a change of plea and that additional time was necessary to complete negotiations. It cites the follow-

ing exchange between the district court and counsel:

> [GOVERNMENT]: [T]he government has presented a proposed plea agreement to Miss Thompson [counsel for Scantleberry], and Miss Thompson, I'm sure, can speak on the point. She is in the process of trying to make arrangements with her client to go over the agreement, and we're hopeful that, as opposed to a trial date, that we'll actually be looking for a Rule 11 hearing date.
>
> THE COURT: All right. Miss Thompson.
>
> MS. THOMPSON: Yes. I do think that's accurate, Judge, that we probably are looking for a Rule 11 hearing date.

April 3, 1997 Status Conference, Tr. 1–2.

Secondly, the government argues that the trial date was set for May 12, 1997, largely in order to accommodate defense counsel who also had other trial dates. It argues that at the April 3 status conference, the government told the court that it was unavailable between April 13 and April 29, while defense counsel stated that she was unavailable between April 29 and May 12. The transcript of that discussion reads as follows:

> [GOVERNMENT]: I don't see more than a day or two for trial days. Unfortunately, though, there are two weeks in the end of April where I have to be in Washington, the—beginning on the 13th through the 27th of April. And on the 29th I'm in court in Boston.
>
> THE COURT: On the 29th?
>
> [GOVERNMENT]: Yes, of April.
>
> THE COURT: But just for that day? ... What about the first week of May?
>
> [GOVERNMENT]: First week of May I look pretty good.
>
> [THE COURT]: Miss Thompson.
>
> MISS THOMPSON: I start—I know you've heard this from me before, Judge, the last time I was here. I have a murder trial starting May 5th. I'm sure that it's going to go. I know that this trial is going to happen.... I'm expecting to be tied up that week [the week of May 5th]. And the following week, however, the week of May 12th, I think that I have a pretty open calendar that week.

> The week preceding the first week in May, I have a rape trial starting on April 29th that I expect probably will take two or three days to try.
>
> THE COURT: What about May 12th, Monday, May 12th?
>
> MS. THOMPSON: May 12th, assuming that my trial ends as I anticipate, would be fine.

April 3, 1997 Status Conference, Tr. 3–4.

The government contends that since defense counsel informed the court that she would not be available between April 29 and May 12, those days between April 29 and May 12 should be excluded from the speedy trial calculus. It asserts that even if the court accepts the defendant's argument that no plea negotiations were underway, this calculation would leave the total of non-excludable days at sixty-five, which is within the total number of days permitted by the STA.

We need not and do not reach the issue of the STA status of a period of plea negotiations. Assuming the period of plea negotiations is within the running of the STA clock, there is still no STA violation. Both the court and the government were prepared to go to trial by April 30th, at day 65 of the 70 day period, but the defense counsel was not, due to her own scheduling conflicts. A continuance was granted to accommodate her schedule.

In *United States v. Pringle*, 751 F.2d 419, 432 (1st Cir.1984), this Court held that scheduling conflicts constitute legitimate grounds for granting a continuance under § 3161(h)(8). One of the factors to be considered by the court in granting a continuance is "[w]hether the failure to grant such a continuance ... would unreasonably deny the defendant or the Government continuity of counsel...." 18 U.S.C. § 3161(h)(8)(B)(iv).

Because the continuance was granted to aid defense counsel, and maintain continuity of counsel, the period between April 29, 1997, and May 8, 1997, is excludable. *Cf. Santiago–Becerril*, 130 F.3d at 17 ("By notifying the court of his availability for trial, defense counsel may be said to have impliedly moved for a new trial date. The court acted on the

implied motion ... by setting a new trial date.... Motions that do not require a hearing may toll the seventy-day time limit for up to thirty days.").

To hold otherwise would be to subvert the purpose of the STA, and allow defense counsel to "sandbag" the district court. Under the appellant's line of argument, a defense counsel could cooperate with the district court in setting a trial date without informing the court that by granting certain continuances, the STA would be violated. Defense counsel cannot have it both ways. Either she must agree that the continuance granted for her benefit be excluded from STA consideration, or she must object to the continuance. To permit defense counsel to have both the continuance and the time included in the STA calculus is impermissible. *Cf. United States v. Ortiz*, 23 F.3d 21, 28 (1st Cir. 1994) (finding no Speedy Trial Act violation where defense counsel raised no objection to trial continuance).

## II. *Sufficiency of the Evidence*

Scantleberry contends that the evidence presented at trial was insufficient to prove that he did not have the express consent of the Attorney General to reapply for admission to the United States.

 We review the sufficiency of the evidence as a whole, in a light most favorable to the verdict, taking into consideration all reasonable inferences. We do not reweigh the credibility of the witnesses. Rather, we resolve all credibility issues in favor of the verdict. *See United States v. Hahn*, 17 F.3d 502 (1st Cir.1994), *cited in United States v. Reyes–Medina*, No. 94–1923, 1995 WL 247343 (1st Cir.1995). "The evidence may be entirely circumstantial, and need not exclude every hypothesis of innocence; that is, the factfinder may decide among reasonable interpretations of the evidence." *Id.* (quoting *United States v. Batista–Polanco*, 927 F.2d 14, 17 (1st Cir.1991)).

Sections 1326(a) and (b)(2) provide in relevant part that: 1) any alien; 2) whose deportation was subsequent to a conviction for commission of an aggravated felony; 3) who enters or attempts to enter, or is at any time found in, the United States; 4) without the express consent of the Attorney General for such entry; 5) shall be fined and/or imprisoned. *See* 8 U.S.C. § 1326. Scantleberry challenges only the sufficiency of the evidence on the fourth element: reentry without the express consent of the Attorney General for such entry.

 He argues that in its case-in-chief, the government presented a Certificate of Nonexistence of Record, which stated that no record was found of any application for permission to reenter made by "Guillermo Scantleberry, also known as Guillermo Scantleberry–Frank and Guillermo A. Scantleberry." The original warrant authorizing the deportation of the defendant in 1992 referred to the defendant as "Scantleberry, Guillermo F., aka: Scantleberry–Frank, Guillermo." The defendant was subsequently indicted as "Guillermo Scantleberry–Frank, a/k/a Gillermo Scantlebrury, a/k/a Guillermo Scantlebury, a/k/a Guillermo Scantleberry." Scantleberry argues that because the government did not examine its records under the right name, he was entitled to a judgment of acquittal. In sum, his claim is that a reversal is warranted in this case because the evidence presented at trial failed to show that the INS ever examined its records for an application from Guillermo F. Scantleberry or Guillermo Scantleberry–Frank, the names under which the defendant had been previously deported.

At trial, the government introduced into evidence a certified INS Certificate of Nonexistence of Record, signed by the Acting Chief of the Records Services Branch for INS, to demonstrate that the defendant had never applied for or received permission from the Attorney General of the United States to reenter the country after he had been deported in November 1992. The Certificate of Nonexistence stated that a diligent search had been conducted of the INS's automated and nonautomated records systems under the names "Guillermo Scantleberry," as well as "Guillermo Scantleberry–Frank," and "Guillermo A. Scantleberry." [1]

In addition, the government submitted evidence relating to Scantleberry's INS Alien File Number ("A–File Number"), A28 926

---

**1.** Courts have upheld the government's use of Certificates of Nonexistence of Record to estab-

749, on the certification attached to the Certificate of Nonexistence. An INS A–File identifies an individual by name, aliases, date of birth, and citizenship, and all records and documents related to the alien are maintained in that file. Testimony elicited at trial revealed that a government agent had provided the defendant's A–File number, aliases, date of birth, country of birth, and date, time, and place of deportation, when he made the request to have the INS's records searched for information concerning whether the defendant had ever applied for permission to reenter the country. The jury could have reasonably inferred that the defendant's unusual surname combined with key information provided by the government agent allowed the INS to conduct a thorough search of its records, and that any application made by the defendant seeking permission to reenter the country under any of his aliases would have been discovered.

Finally, the defendant signed "Guillermo Scantleberry" on the September 23, 1992, warrant of deportation, when he placed his right thumbprint on the warrant. In addition, evidence submitted at trial showed that the defendant used the name "Guillermo Scantlebery" when he signed his name on the ten-print fingerprint card during his arrest for illegal reentry on January 7, 1997. Both of the names used by the defendant were searched in the INS records, which showed no consent to reenter had been given.

Given the defendant's conduct and the thorough search conducted by the INS using the defendant's surname and the A–File Number, the government's evidence was sufficient for the jury to find beyond a reasonable doubt that Scantleberry had not obtained the express consent of the Attorney General to reapply for admission to the United States after his deportation, nor had the prerequisite permission been granted.

### CONCLUSION

For the reasons stated in this opinion, we affirm the judgment of the district court.

lish this element. *See United States v. Martus,*