<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                 United States Court of Appeals
                     For the First Circuit
                      ____________________

No. 98-1119

                         UNITED STATES,

                           Appellee,

                               v.

                   CARLOS ANGEL MUOZ-AMADO,
                    A/K/A CHRISTOPHER MUOZ,

                     Defendant, Appellant.

                      ____________________

          APPEAL FROM THE UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF PUERTO RICO

         [Hon. Jos Antonio Fust, U.S. District Judge]

                      ____________________

                             Before

                    Torruella, Chief Judge,

                Stahl and Lynch, Circuit Judges.

                     _____________________

   Susana E. Fara, by appointment of the Court, on brief, for
appellant.
   Guillermo Gil, United States Attorney, Jorge E. Vega-Pacheco,  
Chief, Criminal Division, Jacabed Rodrguez-Coss, Assistant United
States Attorney, and Camille Vlez-Riv, Assistant United States
Attorney, on brief, for appellee.

                      ____________________

                         June 30, 1999
                      ____________________

        TORRUELLA, Chief Judge.  Carlos Angel Muoz-Amado
("Muoz") appeals from his convictions for conspiracy: (1) to
possess with intent to distribute multi-kilogram quantities of
cocaine on board a vessel of the United States, in violation of 46
U.S.C.  1903 (j) & (f); and (2) to import multi-kilogram
quantities of cocaine into the United States, in violation of 21
U.S.C.  952(a) &  953.  Muoz argues that his speedy trial rights
under the Speedy Trial Act, 18 U.S.C.  3161, and the Sixth
Amendment were violated.
                           BACKGROUND
        We recount only the critical chain of events central to
this appeal.  On November 15, 1995, a Puerto Rico grand jury
returned a three count indictment against Muoz and Mario Saavedra
charging them with violations of various narcotics laws.  Muoz was
arrested in Miami, Florida on November 17, 1995.  Muoz first
appeared before the United States District Court for the Southern
District of Florida on November 17, 1995.  On November 20, 1995, a
detention hearing was held at which the court ordered Muoz held on
$500,000 bail.  A removal hearing was held on November 27, 1995.  
At the hearing, the court ordered the removal and transportation of
Muoz to the United States District Court for the District of
Puerto Rico.  On January 25, 1996, Muoz made his initial
appearance before the district court for the District of Puerto
Rico.  On February 5, 1996, Muoz was arraigned and pled not guilty
to all three counts of the indictment.
        Muoz filed a motion to dismiss for lack of a speedy
trial on June 26, 1996.  He filed a second motion to dismiss on the
same grounds on June 17, 1997.  Both motions were denied.  On
June 19, 1997, a jury trial commenced.  On July 1, 1997, Muoz was
convicted on all three counts.  The district court sentenced Muoz
to: (1) 324 months of imprisonment on each count, to be served
concurrently; (2) a supervised term of release of five years as to
each count, to be served concurrently; and (3) a fine of $10,000 as
to each count, and a special monetary assessment of $100 as to each
count.
                           DISCUSSION
I.  Speedy Trial Act Claim
        The Speedy Trial Act ("STA") is designed "to protect a
defendant's constitutional right to a speedy trial, and to serve
the public interest in bringing prompt criminal proceedings."  
United States v. Scantleberry-Frank, 158 F.3d 612, 614 (1st Cir.
1998) (quoting United States v. Santiago-Becerril, 130 F.3d 11, 15
(1st Cir. 1997)).  The STA provides that the government must bring
a criminal defendant to trial no more than seventy days after the
later of the filing date of the information or indictment, or the
date on which the criminal defendant first appears before a
judicial officer of a court in which the charge is pending.  See 18
U.S.C.  3161(c)(1).  In calculating the seventy days, the STA
excludes certain time periods.  See 18 U.S.C.  3161(h)(1)-(9);  
see also Scantleberry-Frank, 158 F.3d at 614.  If a criminal
indictment is not brought to trial within the time limit imposed by
3161(c)(1), as extended by operation of  3161(h)(1)-(9), the
penalty provisions of the STA mandate that "the information or
indictment shall be dismissed on motion of the defendant." 18
U.S.C.  3162(a)(2).  This Court reviews the disposition of an STA
issue for clear error as to factual findings and de novo as to
legal rulings.  See United States v. Rodrguez, 63 F.3d 1159, 1162
(1st Cir. 1995).
        We begin at the beginning.  The preeminent question in
this case is: when did time begin to accrue for STA purposes?
Section 3161(c)(1) requires that a defendant be tried within
seventy days of the occurrence of one of two events:  the filing of
the indictment or the defendant's appearance "before a judicial
officer of the court in which such charge is pending, whichever
date last occurs."  18 U.S.C.  3161(c)(1).  Relying on 18 U.S.C.
3161(h)(1)(H) (which provides that any unreasonable delay
resulting from the transfer of a defendant be included in STA
calculations and mandating that any such delay in excess of ten
days from the date of the order directing transportation and the
defendant's arrival at the destination be presumed unreasonable),
Muoz argues that the STA clock began to run on November 27, 1995,
when he was ordered removed to Puerto Rico, and that only ten days
of the period between the removal order and his January 25, 1996
appearance should be excluded from the STA calculation.  The
government counters that the STA clock began to run on January 25,
1996, when Muoz first appeared before a judicial officer in Puerto
Rico.
        Muoz's reliance on this  3161(h)(1)(H) to establish a
violation of the STA in his case is misplaced. Section  
3161(h)(1)(H) is a tolling provision, not one that sets forth the
events that trigger the start of the seventy-day period in which a
trial must be held.  Section  3161(c)(1) clearly states that "the
trial of a defendant charged in an information or indictment with
the commission of an offense shall commence within seventy days
from the filing date (and making public) of the information or
indictment, or from the date the defendant has appeared before a
judicial officer of the court in which such charge is pending,
whichever date last occurs." (emphasis added).  Muoz first
appeared before a judicial officer of the District of Puerto Rico
on January 26, 1995.  The delay resulting from the transfer of
Muoz from Miami to Puerto Rico (the court in which the charges
were pending) thus took place well before the STA clock even began
to run.  See United States v. Barnes, 159 F.3d 4, 10 (1st Cir.
1998).  As a result, there was no STA violation.
II.  Sixth Amendment Claim
         Muoz contends that the delay in his being brought to
trial violated his constitutional right to a speedy trial.  We find
no merit in this contention.
        The Sixth Amendment to the United States Constitution
provides, in pertinent part, that "[i]n all criminal prosecutions,
the accused shall enjoy the right to a speedy and public trial."  
U.S. Const. amend. VI.  This right attaches upon arrest or
indictment, whichever occurs first.  See United States v.
MacDonald, 456 U.S. 1, 6-7 (1982); United States v. Mala, 7 F.3d
1058, 1061 (1st Cir. 1993); United States v. Colombo, 852 F.2d 19,
23 (1st Cir. 1988). For Sixth Amendment purposes, Muoz is entitled
to a computation of time from November 15, 1995, the date of his
indictment.
        That there was no violation of the STA in this case does
not necessarily preclude a court from finding a violation of
Muoz's Sixth Amendment right to a speedy trial.  See United States
v. Santiago-Becerril, 130 F.3d 11, 21 (1st Cir. 1997).  Section
3173 of the STA states that "[n]o provision of this chapter shall
be interpreted as a bar to any claim of denial of speedy trial as
required by amendment VI of the Constitution."  18 U.S.C.  3173;  
see also United States v. Mitchell, 723 F.2d 1040, 1049 (1st Cir.
1983).  "It would be, however, 'an unusual case in which the time  
limits of the [STA] have been met but the [S]ixth [A]mendment right
to speedy trial has been violated.'"  Mitchell, 723 F.2d at 1049
(quoting United States v. Nance, 666 F.2d 353, 360 (9th Cir.
1982)). This court reviews a district court's speedy trial
determination under the Sixth Amendment for abuse of discretion.  
See Santiago-Becerril, 130 F.3d at 21.
        In Barker v. Wingo, 407 U.S. 514, 530-33 (1972), the
Supreme Court established a four-part balancing test to be used in
determining whether a defendant's Sixth Amendment right to a speedy
trial has been violated.  A court should consider:  (1) the length
of the delay; (2) the reasons for the delay; (3) the defendant's
assertion of his speedy trial right; and (4) the prejudice to the
defendant caused by the delay.  See Barker, 407 U.S. at 530.  "None
of these factors is 'either a necessary or sufficient condition to
the finding of a deprivation of the right of speedy trial.  Rather,
they are related factors and must be considered together with such
other circumstances as may be relevant.'"  United States v. Henson,
945 F.2d 430, 437 (1st Cir. 1991) (quoting Barker, 407 U.S. at
533).
        The first factor, the length of the delay, was identified
by the Supreme Court as:  
                 to some extent a triggering mechanism.  Until
        there is some delay which is presumptively
        prejudicial, there is no necessity for inquiry
        into the other factors that go into the
        balance. Nevertheless, because of the
        imprecision of the right to speedy trial, the
        length of delay that will provoke such an
        inquiry is necessarily dependent upon the
        peculiar circumstances of the case. For
        example, the delay that can be tolerated for
        an ordinary street crime is less than for a
        serious, complex conspiracy charge.

Barker, 407 U.S. at 530-31.  The Supreme Court has said that "the
lower courts have generally found postaccusation delay
'presumptively prejudicial' at least as it approaches one year."  
Doggett v. United States, 505 U.S. 647, 652 n.1 (1992) (citations
omitted).  We shall assume, under the foregoing, that the nineteen
month delay in this case was "presumptively prejudicial" so as to
trigger further inquiry.  See, e.g., Santiago-Becerril, 130 F.3d at
21 (assuming that a fifteen month delay was presumptively
prejudicial so as to trigger further inquiry); Colombo, 852 F.2d at
24 (holding that a twenty-four month delay was long enough to be
presumptively prejudicial).  Still, we hold that the cumulative
effect of the pretrial delay, viewed under all the factors set
forth in Barker, falls short of establishing a Sixth Amendment
violation.
        Once an examination of the Sixth Amendment claim is
triggered, the weight given in the analysis to the length of the
delay depends upon the extent to which the delay exceeds the bare
minimum considered presumptively prejudicial.  See Doggett, 505
U.S. at 652.  Muoz waited over nineteen months for the
commencement of trial in this case, a case more complicated than
"an ordinary street crime" but less so than "a serious, complex
conspiracy charge."  Barker, 407 U.S. at 531.  Arguably, therefore,
the period of the delay was long enough to tip the scales slightly
in favor of Muoz's claim.
        The second factor, the reasons for the delay, has been
called, "the focal inquiry."  Santiago-Becerril, 130 F.3d at 22
(citation omitted).  As with the first factor, "[h]ere, too,
different weights should be assigned to different reasons."  
Barker, 407 U.S. at 531.  Muoz argues that the chief reason for
the delay was the two month period from the time Muoz was ordered  
removed from the Southern District of Florida until his appearance
before a judicial officer in the District of Puerto Rico.  Even
acknowledging the fact that the government cannot simply buy Muoz
a coach ticket on an airline and immediately place him on a flight
to San Juan, two months seems to be quite a long time to transport
an inmate from South Florida to San Juan.
        That said, Muoz ignores the role his many pretrial
motions played in causing the nineteen month delay between his
indictment and the jury trial.  His many motions included: (1) a
motion for Luis Plaza to withdraw as attorney, and to extend the
time to announce new counsel (3/11/96); (2) a motion to transfer
the case to the Southern District of Florida (6/11/96); (3) a
motion requesting the mandatory disqualification or recusal of the
trial judge and a change of venue (6/24/96); (4) a motion to compel
the government to administer polygraph examinations to witnesses
(6/24/96); (5) a pro se motion to dismiss the indictment alleging
government misconduct, destruction of exculpatory evidence, and
prosecutorial misconduct (7/2/96); (6) a pro se motion to dismiss
the indictment alleging government misconduct and seeking to compel
the government to disclose a personnel file, information, and
supplementary evidence (7/10/96); (7) a pro se motion to dismiss
the indictment alleging violation of due process and constitutional
rights (7/15/96); (8) a pro se motion for the setting of a hearing
(7/15/96); (9) a pro se motion for additional discovery and Jencks
Act material (7/26/96); (10) a pro se motion to suppress evidence
(7/26/96); (11) a motion for Joseph Laws to withdraw as attorney
(7/29/96); and (12) a motion for Joseph Laws to withdraw as
attorney (11/15/96).
        The third factor, the defendant's assertion of his speedy  
trial right, "is entitled to strong evidentiary weight in
determining whether the defendant is being deprived of the right."  
Barker, 407 U.S. 531-32.  A defendant should give some indication,
prior to his assertion of a speedy trial violation, that he wishes
to proceed to trial.  See Santiago-Becerril, 130 F.3d at 22.
        The defendant filed two motions to dismiss for lack of a
speedy trial.  The first was filed on June 26, 1996, and the second
was filed at the eleventh hour before trial on June 17, 1997.  In
between the two motions, as the above catalogue of actions
illustrates, Muoz demonstrated a "lack of enthusiasm for the
speedy trial right which he now asserts."  Henson, 945 F.2d at 438
(1st Cir. 1991) (internal quotation marks and citation omitted).
        The fourth factor -- the prejudice to the defendant
caused by the delay -- "should be assessed in the light of the
interests of defendants which the speedy trial right was designed
to protect.  Th[e] Court has identified three such interests: (i)
to prevent oppressive pretrial incarceration; (ii) to minimize
anxiety and concern of the accused; and (iii) to limit the
possibility that the defense will be impaired."  Barker, 407 U.S.
at 532 (footnote omitted).
        The Barker Court went on to discuss the disadvantages of
lengthy pretrial incarceration for the accused who cannot obtain
his release.  See Barker, 407 U.S. at 532-33.  However, the
nineteen months of pretrial incarceration in this case, by itself,
is insufficient to establish a constitutional level of prejudice.  
Cf. Santiago-Becerril, 130 F.3d at 23 (stating that "fifteen months
of pretrial incarceration was insufficient to establish a
constitutional level of prejudice").
        Muoz does not allege any anxiety or concern resulting
from his pretrial delay so we immediately turn to the third and
final factor.
        "Among the three interests safeguarded by the right to
speedy trial as guaranteed under the [S]ixth [A]mendment, 'the most
serious is [protection against impairment of the defense] because
the inability of a defendant adequately to prepare his case skews
the fairness of the entire system.'"  Barker, 407 U.S. at 532
(citations omitted).
        Muoz claims in a conclusory fashion that he "suffered
prejudice while incarcerated.  In the interim . . . witnesses left
the country and were not available for trial."  Appellant's Br. at
19.  Nowhere does he delineate: (1) the alleged prejudice he
suffered; (2) the alleged witnesses who left the country and were
not available for trial; or (3) the substance of the testimony that
these alleged witnesses would have provided.  There is no
indication here that the period of pretrial delay interfered in any
way with Muoz's ability to present evidence or obtain the
testimony of witnesses, or that it had any impact on the fairness
of his trial.  See Colombo, 852 F.2d at 25-26. Accordingly, this
paramount interest in no way favors Muoz's claim of constitutional
impairment.
        We conclude, applying Barker's balancing test, that
Muoz's constitutional right to a speedy trial was not violated.  
                           CONCLUSION
        For the reasons stated in this opinion, we affirm.

</body>

</html>