TORRUELLA, Circuit Judge,
dissenting.
Considering the number of green card violations that have been successfully prosecuted each year,[5] one might ask how it was that the government was able to proceed without the benefit of a ruling in its favor such as the present one. The fact is that such evidence has not, up until now, been admitted to prove § 1546 violations. In this regard, it is pertinent to emphasize that neither the government nor, for that matter, the majority have cited to any reported case allowing evidence of such extraneous conduct to be admitted for the purpose of establishing a green card violation. I must confess to equal frustration in searching in vain for such jurisprudence.
*47 The government’s claim that INS Certificates are regularly used as proof in criminal cases, and its citation to United States v. Scantleberry-Frank, 158 F.3d 612, 616-17 (1st Cir.1998), as authority for this proposition, is at best disingenuous. Such certificates have been approved as relevant evidence in illegal re-entry cases to prove that the Attorney General has not granted permission to re-enter the United States. Id. There is no reported case approving use of such a certificate in a situation such as in the present case.
Given the totality of the circumstances, including those that will be presently discussed, I believe it is fair to conclude that the government’s insistence on introducing the accused’s allegedly illegal entry into this country to prove use by him of an illegal green card is fueled by inappropriate considerations. To me, it is an indicia that the government wants to bolster an unsympathetic prosecution (the fact is that defendant did not need a green card to work in this country) by introducing uncharged illegal activity,[6] to so prejudice the accused in the eyes of the jury that its findings regarding the charged illegal action will become a foregone conclusion. See United States v. Varoudakis, 233 F.3d 113, 122 (1st Cir.2000). Particularly if it is accepted, arguendo, that the government has an otherwise strong case (as the majority points out, INS records show no green card was ever issued to Amaya, maj. op. at 40-41, and that the government can prove that the green card which it has in its possession is false, id. at 43), it becomes transparent that the introduction of the uncharged illegal entry is intended only for the purpose of inappropriately influencing the jury regarding the illegal green card charge. The district judge was correct in not approving such conduct. See United States v. Aguilar-Aranceta, 58 F.3d 796, 796-800 (1st Cir.1995).
What I find most disturbing about the outcome of this appeal is the majority’s glossing over, not to say totally bypassing, well-established appellate standards for reviewing the evidentiary rulings of a trial court.
It is black letter law that we review a trial court’s evidentiary rulings for abuse of discretion. See United States v. Gilbert, 181 F.3d 152, 160 (1st Cir.1999); Aguilar-Aranceta, 58 F.3d at 798. “In deciding such issues — relevance, confusion, reliability, helpfulness — the district court has a comparative advantage.... Thus, so long as there is no misstatement of the legal standard and the result reached is not clearly unreasonable, the district judge’s ruling is usually respected.” United States v. Schneider, 111 F.3d 197, 201 (1st Cir.1997) (citing United States v. Shay, 57 F.3d 126, 132 (1st Cir.1995)). This standard is so high that of the nearly 2,700 published opinions of this court in the last five years, in only eleven cases have the evidentiary rulings of the district court been overturned. Thus, the majority’s conclusions are not only wrong, but unusually so. Nevertheless, in reaching the wrong result, the majority’s ruling is quite revealing.
For the INS Certificate to be relevant evidence it must assist in proving an element of the crime charged. “[W]e consider the relationship of the evidence sought to be admitted to the elements of the offense and to [any] relevant defenses offered by the [defendant].” United States v. Smith, 940 F.2d 710, 713 (1st Cir.1991). The statute under which Amaya is charged has three elements: (1) the use or at *48 tempted use; (2) of an “illegal” green card; (3) that Amaya knew was not genuine. See 18 U.S.C. § 1546(a). Contrary to the majority’s conclusions, I am of the opinion that nothing in the INS Certificate makes it more or less probable that defendant knew the green card he used was not authentic. The government argues that since Amaya entered the country illegally and had not regularized his status, he could not obtain a green card, and thus, it is probable that he knew the green card was not genuine.- This argument is tenuous at best. At the time of the events at issue here, Amaya was no longer an illegal alien in the sense, that he was not immediately deportable and thus the alleged link between his illegal entry and the fraudulent green card is not apparent. Given the temporal distance between the two events and the intervening petition for asylum, the district court did not abuse its discretion in excluding the INS Certificate as irrelevant.
The majority indicates that “[n]o sensible judge would be likely to let in the unlawful entry evidence to show falsity.” Maj. op. at 43. But in this respect, the fact is that the prosecutor told the trial judge that this evidence was being offered “to prove the crime charged,” i.e. use of a false card.[7] It would thus seem appropriate to conclude that the trial judge’s exclusion of such evidence was not an abuse of discretion, and was not clearly unreasonable, and thus should be upheld. But the majority rules otherwise.
The next decisional inconsistency is equally intriguing. The majority concludes that “a judge who allow[s] in prejudicial evidence' — [unfairly prejudicial] — [8] to prove something that [is] so easily and definitively proved without such prejudice and by more straightforward means [,] ... court[s] reversal.” Id. It then points to the fact that the false card was in the possession of the government, and that therefore “further independent evidence of Amaya’s knowledge [is] unnecessary for conviction.” Id at 43. It would seem that this conclusion, which I agree with, would inevitably lead to the application of the previously stated principle regarding allowance in evidence of unnecessarily prejudicial evidence. However, the majority totally negates these correct conclusions, and instead reaches a contradictory result based on a series of speculations and surmises about jury behavior and possible lawyer arguments, with but a passing mention of the applicable standard of review in favor of “logic.” Maj. op. at 44. “Upon this point a page of history is worth a volume of logic.” New York Trust Co. v. Eisner, 256 U.S. 345, 349, 41 S.Ct. 506, 65 L.Ed. 963 (1921)(Holmes, J.).[9]
The majority concedes, as it must, that “the argument for exclusion [of the illegal entry evidence] under Rule 403 is far from frivolous.” Maj. op. at 45. Were it to apply the settled standard of review to this conclusion, affirmance of the trial *49 judge’s ruling would be mandated. Instead, again relying on flawed theories of predictive conduct by jurors, it downgrades the concession by stating that “the extent of likely prejudice here should not be overstated”. Id at 45. Of course, this is not the ease. In truth, the effect on a jury of the introduction in evidence of pri- or criminal conduct by a defendant cannot be understated. That juries treat prior bad acts evidence as highly probative of the charged crime has been confirmed by empirical investigations. See United States v. Daniels, 770 F.2d 1111, 1116 (D.C.Cir.1985); Harry Kalven, Jr. & Hans Zeisel, The American Jury 160 (1966); see also Abraham P. Ordover, Balancing the Presumptions of Guilt and Innocence: Rules 404(b), 608(b) and 609(a), 38 Emory L.J. 135 (1989); Roselle L. Wissler & Michael J. Saks, On the Inefficacy of Limiting Instructions: When Jurors Use Prior Conviction Evidence To Decide on Guilt, 9 L. & Hum. Behav. 37 (1985). No one who has tried a criminal case before a jury would slight the impact of such evidence in influencing the outcome of that proceeding. The experienced trial judge that decided to exclude it in this case, himself a former federal prosecutor, was surely fully cognizant of the unfair prejudice to defendant lurking in this evidence, and properly exercised his discretion in excluding it as irrelevant and unnecessary. An appellate court should not disturb this ruling, at a minimum, because it was not clearly unreasonable.
With respect, although the majority correctly states the elements of the crime charged, maj. op. at 43, I believe it stretches the bounds of legality, reason and logic beyond the breaking point in its attempt to connect the illegal evidence to the crime charged. Id. at 44r-45. It again resorts to speculative predictions, which regretfully, I find inappropriate and unconvincing.
I see no reason why we should give the government a second bite at the apple by remanding the case for what amounts to a second Rule 403 balancing, one which I believe has already effectively taken place when the district court exercised its discretion to exclude the evidence proffered by the government.
Because I believe that the decision of the district court was correct when viewed against the recognized standard of review, and because it was well within its discretionary power to so rule, I would affirm.
I respectfully dissent.

. In 2002 (the last date available) there were 380 prosecutions nationwide of 18 U.S.C. § 1546 violations resulting in 375 convictions. See Fed. Justice Statistics Program, Defendants in Criminal Cases in U.S. District Court, Fiscal Year 2002, at http://frjc.ur-ban.org/noframe/wqs/q — data—l.cfm# 2002.

. The use of uncharged conduct in criminal proceedings has recently become the focus of Supreme Court attention and scrutiny in a not totally unrelated context. See Blakely v. Washington, - U.S. -, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

.This evidence also treads close to the line set forth in Federal Rule of Evidence 404(b), though the question was not briefed by the parties. As the government acknowledged before the district court, there may also be unexplored issues related to Rule 404(b). The prosecutor stated "I would suggest that — I am not offering this evidence to sully his character or for some other purpose such as that. I am offering it simply to prove the crime that he is charged with.” Rule 404(b) prohibits the use of prior crimes as evidence of a defendant's propensity to commit a present crime.

. The majority admits that "[p]roof of Ama-ya's unlawful entry is surely prejudicial in the sense intended by Rule 403.” Maj. op. at 45. This would be difficult to deny.

. See also Oliver Wendell Holmes, Jr., The Common Law 5 (1881)("The life of the law has not been logic: it has been experience.”).