**UNITED STATES, Appellee,**

v.

**Carlos Angel MUÑOZ–AMADO, a/k/a Christopher Muñoz, Defendant, Appellant.**

**No. 98–1119.**

United States Court of Appeals, First Circuit.

Heard May 3, 1999.

Decided June 30, 1999.

Susana E. Faría, by appointment of the Court, on brief, for appellant.

Guillermo Gil, United States Attorney, Jorge E. Vega–Pacheco, Chief, Criminal Division, Jacabed Rodríguez–Coss, Assistant United States Attorney, and Camille Vélez–Rivé, Assistant United States Attorney, on brief, for appellee.

Before TORRUELLA, Chief Judge, STAHL and LYNCH, Circuit Judges.

TORRUELLA, Chief Judge.

Carlos Angel Muñoz–Amado ("Muñoz") appeals from his convictions for conspiracy: (1) to possess with intent to distribute multi-kilogram quantities of cocaine on board a vessel of the United States, in violation of 46 U.S.C.App. § 1903(j) & (f); and (2) to import multi-kilogram quantities of cocaine into the United States, in violation of 21 U.S.C. § 952(a) & § 953. Muñoz argues that his speedy trial rights under the Speedy Trial Act, 18 U.S.C. § 3161, and the Sixth Amendment were violated.

## BACKGROUND

We recount only the critical chain of events central to this appeal. On November 15, 1995, a Puerto Rico grand jury returned a three count indictment against Muñoz and Mario Saavedra charging them with violations of various narcotics laws. Muñoz was arrested in Miami, Florida on November 17, 1995. Muñoz first appeared before the United States District Court for the Southern District of Florida on November 17, 1995. On November 20, 1995, a detention hearing was held at which the court ordered Muñoz held on $500,000 bail. A removal hearing was held on November 27, 1995. At the hearing, the court ordered the removal and transportation of Muñoz to the United States District Court for the District of Puerto Rico. On January 25, 1996, Muñoz made his initial appearance before the district court for the District of Puerto Rico. On February 5, 1996, Muñoz was arraigned and pled not guilty to all three counts of the indictment.

Muñoz filed a motion to dismiss for lack of a speedy trial on June 26, 1996. He filed a second motion to dismiss on the same grounds on June 17, 1997. Both motions were denied. On June 19, 1997, a jury trial commenced. On July 1, 1997, Muñoz was convicted on all three counts. The district court sentenced Muñoz to: (1) 324 months of imprisonment on each count, to be served concurrently; (2) a

supervised term of release of five years as to each count, to be served concurrently; and (3) a fine of $10,000 as to each count, and a special monetary assessment of $100 as to each count.

## DISCUSSION

### I. Speedy Trial Act Claim

 The Speedy Trial Act ("STA") is designed "to protect a defendant's constitutional right to a speedy trial, and to serve the public interest in bringing prompt criminal proceedings." *United States v. Scantleberry–Frank*, 158 F.3d 612, 614 (1st Cir.1998) (quoting *United States v. Santiago–Becerril*, 130 F.3d 11, 15 (1st Cir.1997)). The STA provides that the government must bring a criminal defendant to trial no more than seventy days after the later of the filing date of the information or indictment, or the date on which the criminal defendant first appears before a judicial officer of a court in which the charge is pending. *See* 18 U.S.C. § 3161(c)(1). In calculating the seventy days, the STA excludes certain time periods. *See* 18 U.S.C. § 3161(h)(1)-(9); *see also Scantleberry–Frank*, 158 F.3d at 614. If a criminal indictment is not brought to trial within the time limit imposed by § 3161(c)(1), as extended by operation of § 3161(h)(1)-(9), the penalty provisions of the STA mandate that "the information or indictment shall be dismissed on motion of the defendant." 18 U.S.C. § 3162(a)(2). This Court reviews the disposition of an STA issue for clear error as to factual findings and de novo as to legal rulings. *See United States v. Rodriguez*, 63 F.3d 1159, 1162 (1st Cir.1995).

 We begin at the beginning. The preeminent question in this case is: when did time begin to accrue for STA purposes? Section 3161(c)(1) requires that a defendant be tried within seventy days of the occurrence of one of two events: the filing of the indictment or the defendant's appearance "before a judicial officer of the court in which such charge is pending,

whichever date last occurs." 18 U.S.C. § 3161(c)(1). Relying on 18 U.S.C. § 3161(h)(1)(H) (which provides that any unreasonable delay resulting from the transfer of a defendant be included in STA calculations and mandating that any such delay in excess of ten days from the date of the order directing transportation and the defendant's arrival at the destination be presumed unreasonable), Muñoz argues that the STA clock began to run on November 27, 1995, when he was ordered removed to Puerto Rico, and that only ten days of the period between the removal order and his January 25, 1996 appearance should be excluded from the STA calculation. The government counters that the STA clock began to run on January 25, 1996, when Muñoz first appeared before a judicial officer in Puerto Rico.

Muñoz's reliance on this § 3161(h)(1)(H) to establish a violation of the STA in his case is misplaced. Section 3161(h)(1)(H) is a tolling provision, not one that sets forth the events that trigger the start of the seventy-day period in which a trial must be held. Section 3161(c)(1) clearly states that "the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, *or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.*" (emphasis added). Muñoz first appeared before a judicial officer of the District of Puerto Rico on January 26, 1995. The delay resulting from the transfer of Muñoz from Miami to Puerto Rico (the court in which the charges were pending) thus took place well before the STA clock even began to run. *See United States v. Barnes*, 159 F.3d 4, 10 (1st Cir.1998). As a result, there was no STA violation.

### II. Sixth Amendment Claim

Muñoz contends that the delay in his being brought to trial violated his constitu-

tional right to a speedy trial. We find no merit in this contention.

■ The Sixth Amendment to the United States Constitution provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. This right attaches upon arrest or indictment, whichever occurs first. *See United States* v. *MacDonald,* 456 U.S. 1, 6–7, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982); *United States v. Mala,* 7 F.3d 1058, 1061 (1st Cir.1993); *United States v. Colombo,* 852 F.2d 19, 23 (1st Cir.1988). For Sixth Amendment purposes, Muñoz is entitled to a computation of time from November 15, 1995, the date of his indictment.

■ That there was no violation of the STA in this case does not necessarily preclude a court from finding a violation of Muñoz's Sixth Amendment right to a speedy trial. *See United States v. Santiago–Becerril,* 130 F.3d 11, 21 (1st Cir.1997). Section 3173 of the STA states that "[n]o provision of this chapter shall be interpreted as a bar to any claim of denial of speedy trial as required by amendment VI of the Constitution." 18 U.S.C. § 3173; *see also United States v. Mitchell,* 723 F.2d 1040, 1049 (1st Cir.1983). "It would be, however, 'an unusual case in which the time limits of the [STA] have been met but the [S]ixth [A]mendment right to speedy trial has been violated.'" *Mitchell,* 723 F.2d at 1049 (quoting *United States v. Nance,* 666 F.2d 353, 360 (9th Cir.1982)). This court reviews a district court's speedy trial determination under the Sixth Amendment for abuse of discretion. *See Santiago–Becerril,* 130 F.3d at 21.

■ In *Barker v. Wingo,* 407 U.S. 514, 530–33, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court established a four-part balancing test to be used in determining whether a defendant's Sixth Amendment right to a speedy trial has been violated. A court should consider: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his speedy trial right; and (4) the prejudice to the defendant caused by the delay. *See Barker,* 407 U.S. at 530, 92 S.Ct. 2182. "None of these factors is 'either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant.'" *United States v. Henson,* 945 F.2d 430, 437 (1st Cir.1991) (quoting *Barker,* 407 U.S. at 533, 92 S.Ct. 2182).

■ The first factor, the length of the delay, was identified by the Supreme Court as:

> to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case. For example, the delay that can be tolerated for an ordinary street crime is less than for a serious, complex conspiracy charge.

*Barker,* 407 U.S. at 530–31, 92 S.Ct. 2182. The Supreme Court has said that "the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year." *Doggett v. United States,* 505 U.S. 647, 652 n. 1, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992) (citations omitted). We shall assume, under the foregoing, that the nineteen month delay in this case was "presumptively prejudicial" so as to trigger further inquiry. *See, e.g., Santiago–Becerril,* 130 F.3d at 21 (assuming that a fifteen month delay was presumptively prejudicial so as to trigger further inquiry); *Colombo,* 852 F.2d at 24 (holding that a twenty-four month delay was long enough to be presumptively prejudicial). Still, we hold that the cumulative effect of the pretrial delay, viewed under all the factors set forth in *Barker,* falls

short of establishing a Sixth Amendment violation.

■ Once an examination of the Sixth Amendment claim is triggered, the weight given in the analysis to the length of the delay depends upon the extent to which the delay exceeds the bare minimum considered presumptively prejudicial. *See Doggett*, 505 U.S. at 652, 112 S.Ct. 2686. Muñoz waited over nineteen months for the commencement of trial in this case, a case more complicated than "an ordinary street crime" but less so than "a serious, complex conspiracy charge." *Barker*, 407 U.S. at 531, 92 S.Ct. 2182. Arguably, therefore, the period of the delay was long enough to tip the scales slightly in favor of Muñoz's claim.

■ The second factor, the reasons for the delay, has been called, "the focal inquiry." *Santiago–Becerril*, 130 F.3d at 22 (citation omitted). As with the first factor, "[h]ere, too, different weights should be assigned to different reasons." *Barker*, 407 U.S. at 531, 92 S.Ct. 2182. Muñoz argues that the chief reason for the delay was the two month period from the time Muñoz was ordered removed from the Southern District of Florida until his appearance before a judicial officer in the District of Puerto Rico. Even acknowledging the fact that the government cannot simply buy Muñoz a coach ticket on an airline and immediately place him on a flight to San Juan, two months seems to be quite a long time to transport an inmate from South Florida to San Juan.

That said, Muñoz ignores the role his many pretrial motions played in causing the nineteen month delay between his indictment and the jury trial. His many motions included: (1) a motion for Luis Plaza to withdraw as attorney, and to extend the time to announce new counsel (3/11/96); (2) a motion to transfer the case to the Southern District of Florida (6/11/96); (3) a motion requesting the mandatory disqualification or recusal of the trial judge and a change of venue (6/24/96); (4) a motion to compel the government to administer polygraph examinations to witnesses (6/24/96); (5) a *pro se* motion to dismiss the indictment alleging government misconduct, destruction of exculpatory evidence, and prosecutorial misconduct (7/2/96); (6) a *pro se* motion to dismiss the indictment alleging government misconduct and seeking to compel the government to disclose a personnel file, information, and supplementary evidence (7/10/96); (7) a *pro se* motion to dismiss the indictment alleging violation of due process and constitutional rights (7/15/96); (8) a *pro se* motion for the setting of a hearing (7/15/96); (9) a *pro se* motion for additional discovery and Jencks Act material (7/26/96); (10) a *pro se* motion to suppress evidence (7/26/96); (11) a motion for Joseph Laws to withdraw as attorney (7/29/96); and (12) a motion for Joseph Laws to withdraw as attorney (11/15/96).

■ The third factor, the defendant's assertion of his speedy trial right, "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531–32, 92 S.Ct. 2182. A defendant should give some indication, prior to his assertion of a speedy trial violation, that he wishes to proceed to trial. *See Santiago–Becerril*, 130 F.3d at 22.

The defendant filed two motions to dismiss for lack of a speedy trial. The first was filed on June 26, 1996, and the second was filed at the eleventh hour before trial on June 17, 1997. In between the two motions, as the above catalogue of actions illustrates, Muñoz demonstrated a "lack of enthusiasm for the speedy trial right which he now asserts." *Henson*, 945 F.2d at 438 (1st Cir.1991) (internal quotation marks and citation omitted).

■ The fourth factor—the prejudice to the defendant caused by the delay— "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. Th[e] Court has identified three such interests: (i) to prevent oppressive pretrial incarcera-

tion; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker,* 407 U.S. at 532, 92 S.Ct. 2182 (footnote omitted).

The *Barker* Court went on to discuss the disadvantages of lengthy pretrial incarceration for the accused who cannot obtain his release. *See Barker,* 407 U.S. at 532–33, 92 S.Ct. 2182. However, the nineteen months of pretrial incarceration in this case, by itself, is insufficient to establish a constitutional level of prejudice. *Cf. Santiago–Becerril,* 130 F.3d at 23 (stating that "fifteen months of pretrial incarceration was insufficient to establish a constitutional level of prejudice").

Muñoz does not allege any anxiety or concern resulting from his pretrial delay so we immediately turn to the third and final factor.

"Among the three interests safeguarded by the right to speedy trial as guaranteed under the [S]ixth [A]mendment, 'the most serious is [protection against impairment of the defense] because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'" *Barker,* 407 U.S. at 532, 92 S.Ct. 2182 (citations omitted).

Muñoz claims in a conclusory fashion that he "suffered prejudice while incarcerated. In the interim ... witnesses left the country and were not available for trial." Appellant's Br. at 19. Nowhere does he delineate: (1) the alleged prejudice he suffered; (2) the alleged witnesses who left the country and were not available for trial; or (3) the substance of the testimony that these alleged witnesses would have provided. There is no indication here that the period of pretrial delay interfered in any way with Muñoz's ability to present evidence or obtain the testimony of witnesses, or that it had any impact on the fairness of his trial. *See Colombo,* 852 F.2d at 25–26. Accordingly, this paramount interest in no way favors Muñoz's claim of constitutional impairment.

We conclude, applying *Barker*'s balancing test, that Muñoz's constitutional right to a speedy trial was not violated.

## CONCLUSION

For the reasons stated in this opinion, we **affirm**.