**UNITED STATES of America, Plaintiff,**

**v.**

**Orville Lee ROBINETTE, Defendant.**

**Nos. Civ.A. 01–340 GMS, CRIM.A. 00–074 GMS.**

United States District Court, D. Delaware.

Dec. 14, 2001.

Colm F. Connolly, U.S. Attorney, Edmond Falgowski, Assistant U.S. Attorney, Wilmington, DE, for Plaintiff.

Orville Lee Robinette, Wilmington, DE, pro se.

### MEMORANDUM AND ORDER

SLEET, District Judge.

## I. INTRODUCTION

Orville Robinette pleaded guilty to bank theft before this court on December 1, 2000 and was subsequently sentenced to thirty (30) months imprisonment on April 9, 2001. Pending before the court is Robinette's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. Robinette alleges numerous errors in his prosecution and sentencing, including prosecutorial delay, speedy trial violations, failure to recognize his mental deficiency and failure to correctly apply the Sentencing Guidelines. Since Robinette fails to present any facts that would support the allegations he makes in his motion, the motion will be denied.

## II. BACKGROUND

From July 1997 to November 1997, Orville Robinette used false information to apply for loans from several banks in Michigan's Upper Peninsula. In particular, he grossly overstated his salary, lied about the length of his employment, and falsely stated that he had never applied for bankruptcy. Moreover, he used his mother's social security number on the loan applications rather than his own. Robinette obtained over $175,000.00 through this scheme.

Secret Service agents in Michigan began investigating Robinette's loans in February 1998. Although Robinette had moved to Pennsylvania by this time, he went to Grand Rapids, Michigan to be interviewed by the Secret Service in May 1998. He was subsequently indicted in the Western District of Michigan for two counts of bank fraud on November 12, 1998.

Robinette's initial appearance on the bank fraud indictment was scheduled for January 6, 1999, but was continued indefinitely. Before he could make an appearance, however, the United States Attorney for the Western District of Michigan agreed to negotiate a guilty plea agreement rather than seek Robinette's arrest. Pursuant to that plea agreement, Robinette would waive the Michigan indictment and his case would be transferred from the Western District of Michigan to the District of Delaware. (Robinette had moved

to southern Delaware by this time).[1] The case was transferred on May 30, 2000. The United States Attorney for the District of Delaware issued a new felony information charging Robinette with one count of bank theft—rather than bank fraud—on December 1, 2000.

On December 1, 2000—the same date the information was issued—Robinette and his counsel, Michael Malkiewicz, appeared before this court. On December 1, 2000, Robinette waived his right to indictment on the Michigan bank fraud charge, pleaded guilty to the felony information charging him with bank theft, and was released on bond. The court then ordered a pre-sentence report and scheduled the sentencing.

The pre-sentence report stated that Robinette suffered from depression, but that this condition has been successfully treated with various medications since 1998. The report also mentioned substance abuse problems, but said that Robinette successfully completed a one week drug and alcohol program in 1999. Regarding Robinette's criminal history, the report indicated that he had two prior convictions, one for fraudulently obtaining prescriptions in 1997 and another for Driving Under the Influence in 1998. The report also revealed that Robinette was on probation from the 1997 offense when he engaged in the conduct leading to the current charge.

The Probation Office calculated Robinette's offense level at fifteen (15) due to the crime itself, the amount of the loss, and the planning involved. The Probation Office also recommended that Robinette not be given a reduction in offense level for acceptance of responsibility because he had attempted to obtain a loan under false

pretenses during the investigation. The pre-sentence report also indicated that an upward adjustment of two levels for obstruction of justice would be appropriate because the financial statement Robinette gave the probation officers failed to disclose the use of his mother's social security number. Including the adjustment for obstruction of justice, the Probation Office calculated Robinette's recommended offense level at seventeen (17).

Based on his two prior convictions and the fact that the current criminal activity took place while he was on probation from a prior offense, Robinette was assigned a criminal history score of five (5). This score placed Robinette in criminal history category III. Given these calculations, Robinette's guideline range was 30–37 months.

Robinette was sentenced by the court on April 9, 2001. Although the Government stated that it would not oppose a two-level reduction for acceptance of responsibility, the court refused to make the adjustment. However, the court did incorporate the *upward* adjustment for obstruction of justice based on the information in the pre-sentence report. The court also accepted the Probation Office's characterization of Robinette's criminal history. After considering all factors, the court ultimately sentenced Robinette to thirty (30) months imprisonment.

## III. THE PARTIES' CONTENTIONS

Robinette contends that his sentence should be vacated or corrected for nine reasons. They are as follows: (1) the Government unnecessarily delayed in prosecuting him because he was first indicted on

---

1. The transfer was made pursuant to Rule 20 of the Federal Rules of Criminal Procedure. Rule 20 allows a defendant to waive trial in one district and permits the United States attorney to transfer the criminal case to any district where the defendant is "arrested, held, or present." FED. R.CRIM. P. 20.

November 12, 1998 but was not placed on bond (arrested) until December 1, 2000; (2) his speedy trial rights were violated; (3) prior to and at the time of his plea and sentencing, he had a diminished mental capacity and could not understand the charges against him; (4) the Government and Mr. Malkiewicz (his attorney) knew of his mental condition but failed to recognize his insanity or diminished capacity; (5) he was a compulsive spender and, therefore, did not know his actions were inappropriate; (6) the court incorrectly failed to reduce his offense level for acceptance of responsibility; (7) it was error to assign him two additional levels for obstruction of justice; (8) the criminal history category of III over-represented his criminal history; and (9) he was entitled to a two-level reduction for substantial assistance to authorities because he testified for the Government in a murder trial in state court.

The Government denies that there is any error and further argues that Robinette has failed to present facts that would allow the court to find that his rights have been violated. The court agrees with the Government and will now explain the basis for its ruling.

## IV. DISCUSSION

### A. Evidentiary hearing

■ Before addressing Robinette's substantive claims, Rule 8 of the Rules Governing Section 2255 Proceedings dictates that the court must consider whether an evidentiary hearing is necessary in this case. *See* 28 U.S.C.A. foll. § 2255 (2001). A hearing is necessary only where the files and records do not conclusively show that the defendant is not entitled to relief. *See id. See also Solis v. United States,* 252 F.3d 289, 294 (3d Cir.2001) (citing 28 U.S.C.A. foll. § 2255); *United States v. Steele,* 241 F.3d 302, 304 (3d Cir.2001) (same). There is no need to conduct a

factual hearing in the present case. Robinette does not provide any new, relevant facts. He merely argues for a different sentencing outcome based upon the undisputed facts. However, as explained below, the undisputed factual record conclusively demonstrates that Robinette is not entitled to relief. Therefore, the court will address Robinette's claims without the aid of an evidentiary hearing.

### B. Robinette's Contentions

Although Robinette asserts numerous claims, they can be distilled into three basic categories: delay, mental incapacity, and incorrect application of the Sentencing Guidelines. The court will address them in turn.

#### 1. Delay

##### a. Pre–Accusation Delay in Prosecution

■ Robinette's assertion that the Government delayed in prosecuting his case is without merit. In order to demonstrate a due process violation based on pre-accusation delay, Robinette must show that the delay between his November 12, 1998 indictment in Michigan and his December 1, 2000 guilty plea resulted in actual, substantial prejudice and that the Government's delay was an intentional device used to gain a tactical advantage. *See United States v. Marion,* 404 U.S. 307, 324, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). Robinette has failed to meet this standard. Although he alleges that the Government delayed purposefully, he provides no facts to support this assertion. Moreover, he fails to explain how he was prejudiced by any alleged governmental delay. Absent the factual predicate for his assertion, the court is unable to conclude that there was a violation of Robinette's rights.

### b. Speedy Trial Violations

■ Robinette's speedy trial rights were not violated for three reasons. First, Robinette waived his right to raise speedy trial issues by pleading guilty. *See United States v. Bohn,* 956 F.2d 208, 209 (9th Cir.1992); *Lebowitz v. United States,* 877 F.2d 207, 209 (2nd Cir.1989). A defendant seeking to raise speedy trial issues after a guilty plea must preserve the right to do so in a plea agreement. *See Lebowitz,* 877 F.2d at 209 (citations omitted). Nothing in the record indicates that Robinette preserved his right to raise speedy trial claims. Therefore, Robinette has waived the issue and cannot claim his speedy trial rights were violated at this juncture.

■ Second, Robinette mistakenly contends that the speedy trial clock in this case began running on November 12, 1998, the date of the Michigan bank fraud indictment. The Speedy Trial Act provides that the speedy trial period begins on the filing date "of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which the charge is pending, *whichever date last occurs.*" 18 U.S.C. § 3161(c)(1) (emphasis added). Where the indictment is issued before arrest, however, the first appearance before a judicial officer in the court where the indictment has been filed is the event that triggers a defendant's speedy trial rights. *See United States v. Garcia,* 995 F.2d 556, 559 (5th Cir.1993) (citing 18 U.S.C. § 3161(c)(1)). Robinette was indicted before being arrested. Therefore, had Robinette appeared in Michigan, the clock would have begun ticking for the bank fraud charge on the date of his appearance before a judge in the Western District of Michigan. However, because Robinette's case was continued and transferred to Delaware, he never appeared in Michigan. Therefore, he did not trigger the speedy trial clock for the bank fraud offense.[2]

■ Finally, the Speedy Trial Act is offense specific. If a subsequent indictment or information charges a defendant with a new offense, the subsequent filing starts a "new, independent speedy trial period." *United States v. Lattany,* 982 F.2d 866, 873 n. 7 (3rd Cir.1993). When Robinette's case was transferred from Michigan, he was recharged with bank *theft* rather than bank *fraud.* Since bank fraud and bank theft are two distinct offenses, a new speedy trial period began when the new information was issued in the District of Delaware on December 1, 2000. Robinette also pled guilty on December 1, 2000. Since Robinette was charged and pled guilty on the same day, his speedy trial rights were not infringed.

### 2. The "diminished capacity" argument

■ Although Robinette asserts that he suffered from "diminished capacity" before, during, and after his sentencing, his assertions lack both factual and legal support. Specifically, Robinette argues that he lacked the capacity to understand the charges against him, or in the alternative, that he was a compulsive spender and did not know that his actions were wrong. The Sentencing Guidelines permit a judge to consider a defendant's "significantly reduced mental capacity" as a basis for downward departure. U.S. SENTENCING

---

**2.** Even if the speedy trial period had begun running in Michigan, either the continuance or the transfer would have been legitimate reasons to toll the speedy trial clock. *See United States v. Munoz–Amado,* 182 F.3d 57, 60 (1st Cir.1999) (finding no violation of Speedy Trial Act where transferring case from Florida to Puerto Rico resulted in delay); *United States v. Lattany,* 982 F.2d 866, 868 (3rd Cir.1993) (approving open-ended continuances to serve the ends of justice).

GUIDELINES MANUAL § 5K2.13 (2000). This term is defined as the "impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful." *Id.*

First, the record does not demonstrate that Robinette was unable to understand the charges against him. After engaging in a lengthy colloquy during the guilty plea, the court found Robinette to be fully competent.[3] Moreover, the court specifically asked Robinette if he understood the charges against him. He answered in the affirmative.[4] The record thus demonstrates that, contrary to his assertions here, Robinette fully understood the charges against him.

■■■ Furthermore, although the Sentencing Guidelines do permit a downward departure where the defendant does not understand the wrongfulness of his conduct, the record refutes the argument that Robinette did not know what he did was wrong. During his guilty plea, after the court found him to be fully competent,

Robinette acknowledged that lying on the bank applications was a "mistake." (Tr. of Guilty Plea at 25–26.) Moreover, although Robinette alleges that he suffers from a "compulsive spending" disorder which rendered him unable to understand that his actions were wrongful, Robinette offers no evidence of his alleged mental incapacity. He fails to state where, when, or by whom this "diagnosis" was made. During the pre-sentence investigation, the Probation Office found that Robinette's only mental concern was depression, and that it had been successfully treated since 1998. There is nothing in the record to contradict this finding. Thus, if Robinette has a condition that rendered him unable to control his behavior at the time of the offense, the record does not disclose it and he has yet to provide the court with concrete evidence of his illness. Since Robinette has not provided the court with any new factual information regarding his alleged illness, the court must continue to believe that he was and is mentally competent and understood the wrongfulness of his behavior.[5] The court therefore concludes that

---

3. The exchange during the guilty plea was as follows:

THE COURT: So as you stand before me today, you have not ingested any medications of any kind; is that correct?

THE DEFENDANT: That's correct, Your Honor.

THE COURT: Or any drugs or alcoholic beverages of any kind?

THE DEFENDANT: That's correct, Your Honor.

THE COURT: Do you understand what is happening here today?

THE DEFENDANT: Yes, I do, Your Honor.

THE COURT: Counsel, do you have any reason to doubt the competence of your client to enter into this plea today?

MR. MALKIEWICZ: I don't have any concern about my client's competence today....

 * * * * * *

THE COURT: Thank you. Based upon this information and the comments just made

by counsel, the Court finds that you are competent and fully capable of proceeding here today.

(Tr. of Guilty Plea at 5–6.)

4. The relevant portion of the guilty plea transcript reads:

THE COURT: Do you understand that the offense to which you are pleading guilty is the offense known as bank theft?

THE DEFENDANT: I do, Your Honor.

(Tr. of Guilty Plea at 15.)

5. Since the court finds that Robinette was competent at all relevant times, the Government and Mr. Malkiewicz never had any duty to report his incompetency, thereby disposing of Robinette's fourth argument.

Robinette did not suffer from a significantly reduced mental capacity.

### 3. Sentencing guidelines

#### a. Adjustment of offense level for acceptance of responsibility

 Robinette was not legally or factually entitled to a reduction in offense level for acceptance of responsibility. The Government and the Probation Office may make recommendations about sentencing, but the court is not bound by the Government's sentencing recommendations. *See* FED. R.CRIM. P. 11(e)(1)(B). Although the Government stated that it would not oppose a reduction for acceptance of responsibility, at both the guilty plea and the sentencing, Robinette acknowledged that he understood the court was not bound to grant the reduction.

 Furthermore, the court had little ground to award a reduction in offense level for acceptance of responsibility. Although making a timely guilty plea can qualify a defendant for a reduction based on acceptance of responsibility, the plea "may be outweighed by conduct . . . that is inconsistent with such acceptance of responsibility." U.S.S.G. § 3E1.1, cmt. n. 3. Robinette did make a timely guilty plea, but there was also evidence that he failed to fully cooperate with the Probation Office during its investigation and persisted in his illegal activities after his guilty plea. Specifically, Robinette did not disclose the use of his mother's social security number to the probation officer. Furthermore, he continued to submit fraudulent loan applications after he pleaded guilty. This misleading and criminal behavior after the guilty plea demonstrates that Robinette did not fully accept responsibility for his actions and negates any prior acceptance of responsibility that might have qualified Robinette for more lenient treatment.

#### b. Adjustment of offense level for obstruction of justice

Robinette's argument that his offense level should not have been increased for obstruction of justice must also fail. The Sentencing Guidelines allow the court to add offense levels where "the defendant willfully obstructed or impeded . . . the administration of justice during the course of the investigation." U.S.S.G. § 3C1.1. According to the guidelines, providing materially false information to a probation officer qualifies as obstructing justice. *See id.* § 3C1.1 cmt. n. 4(h). The guidelines define materiality as "information that, if believed, would tend to influence or affect the issue under determination." *See id.* § 3C1.1 cmt. n. 6.

 The financial statement provided by Robinette was incomplete. In particular, it failed to include the transactions Robinette entered into using his mother's social security number without her permission. Although the Sentencing Guidelines direct that failure to provide information to a probation officer—as opposed to providing false information—may not necessarily amount to obstruction, this exception only applies where the withheld information is not "material." *See id.* § 3C1.1 cmt. n. 5(c). The information withheld here was material. Robinette was being investigated for bank theft. Robinette's financial history was, therefore, a central issue in the investigation. The financial history was relevant not only to the offense conduct, but also to Robinette's ability to make restitution. Thus, any financial information that Robinette provided—or failed to provide—would influence the determination of this critical issue. The court thus finds that Robinette's failure to provide all of the requested financial information to the Probation Office was a material falsehood and, therefore, the award of

two offense levels for obstruction of justice was appropriate.

### c. Calculation of criminal history

Robinette's criminal history was calculated accurately. Section 4A1.1 of the Sentencing Guidelines states:

> "(a) Add 3 points for each prior sentence of imprisonment exceeding one year and one month; (b) Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a); (c) Add 1 point for each prior sentence not counted in (a) or (b) . . . .; (d) Add 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation [or] parole . . ."

U.S.S.G. § 4A1.1.

 In the present case, Robinette was convicted of obtaining a prescription through fraud in 1997 and was sentenced to six months. Under section 4A1.1(b) of the guidelines, this offense would be assigned two (2) points. Furthermore, in 1999, Robinette was convicted for Driving Under the Influence, sentenced to 48 hours to 2 years, and immediately paroled. The guidelines indicate that this offense is worth one (1) point because Robinette was not actually incarcerated. Finally, while Robinette was on probation from the 1997 offense, he began engaging in the illegal activity that lead to his indictment in Michigan. Section 4A1.1(d) states that two (2) points must be added where the defendant engaged in criminal activity while on probation. Thus, Robinette received a score of five (5), which placed him in criminal history category III.

Robinette does not dispute that he was convicted of these crimes or that he was on probation when he committed the instant offense. The court thus finds that the Probation Office's total score of five (5) which resulted in a criminal history category of III was proper.

### d. Adjustment in offense level for substantial assistance to authorities

 Finally, Robinette's assertion that the court should have reduced his offense level for substantial assistance to authorities must also fail. Although Section 5K1.1 of the Guidelines permits the court to grant such a reduction, it can only do so upon motion of the Government. *See* U.S.S.G. § 5K1.1; *See also United States v. Holman,* 168 F.3d 655, 661 (3rd Cir.1999) ("Generally, a sentencing court may not depart below the guideline range based on a defendant's cooperation unless the government makes a motion to permit such a departure."). Nevertheless, the court can review the Government's refusal to make a motion under Section 5K1.1 if the court believes the refusal was based on bad faith, would result in a breach of the Government's plea agreement, or was made with unconstitutional motives. *Holman,* 168 F.3d at 661.

 Robinette asserts that he was entitled to a reduction in offense level based on his testimony in the murder trial in state court. Unfortunately for Robinette, however, the Government never made a Section 5K1.1 motion. Moreover, Robinette has not provided any evidence to demonstrate that the Government's failure to do so was in bad faith, a breach of his plea agreement, or unconstitutional.[6] The record similarly fails to support this allegation. Therefore, Robinette's claim must fail.

---

**6.** Robinette himself stated "neither does this defendant asserts [sic] any unconstitutional motives . . ." (D.I. 36 at 3.)

## V. CONCLUSION

Although Robinette makes many allegations of error and misconduct in the handling of his case, he has failed to provide a factual basis that would allow the court to grant him the relief he seeks. Therefore, his Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody must and will be denied.

For the aforementioned reasons, IT IS HEREBY ORDERED THAT:

1. The petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (D.I.27) is DENIED.