UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

United States of America

   v.

Laveneur Jackson

Criminal No. 18-cr-132-JD
Opinion No. 2020 DNH 059

O R D E R

Defendant Laveneur Jackson, who is proceeding pro se, moves to dismiss the superseding indictment (doc. no. 89). Jackson argues that delay between the time the alleged offenses were committed, and his indictment caused him substantial prejudice, violating the Fifth Amendment's Due Process Clause. Jackson also argues that the ongoing delay in bringing the case to trial violates his Sixth Amendment right to a speedy trial. The government opposes dismissal.

Background

Jackson is charged with aiding and abetting the making of a material false statement in connection with the acquisition of a firearm, in violation of 18 U.S.C. §§ 2, 922(a)(6), and 924(a)(2) (Counts 1 and 3), and possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 924(g)(1) and 924(a)(2) (Counts 2 and 4). The offenses are alleged to have occurred on December 23 and 27, 2016.

On August 22, 2018, nearly twenty months after the alleged offenses occurred, Jackson was indicted.[1]  Jackson was arrested and arraigned approximately six months later, on February 15, 2019.  Jackson has been detained since his arrest.  Currently,[2] Jackson's trial is scheduled for June 2, 2020, which will be almost sixteen months after Jackson's arrest and arraignment.

## Discussion

Jackson moves to dismiss the superseding indictment on the ground that, under the Fifth Amendment, the twenty-month delay in indicting him was excessive and caused him substantial prejudice.  Jackson also argues that the delay between his indictment and trial has been unreasonably lengthy and violates his right to a speedy trial under the Sixth Amendment.

The government opposes Jackson's motion to dismiss, arguing that the pre-indictment delay was justified and did not cause

---

[1] The government filed a superseding indictment on February 19, 2020.  The superseding indictment did not add or remove any charges.  It deleted inaccurate references in Counts 2 and 4 (possession of a firearm by a convicted felon) to a prior felony conviction in September 2013 in Dorchester, Massachusetts.

[2] Although it has not yet directly affected the procession of this case, the Coronavirus Disease 2019 (COVID-19) outbreak has necessitated the continuance of all criminal trials in the District of New Hampshire scheduled to begin before May 1, 2020. Given the ongoing nature of the COVID-19 outbreak, a possibility remains that criminal trials, including Jackson's trial, may need to be continued beyond the current May 1, 2020, date.

any harm to Jackson and that there has been no constitutional violation as to Jackson's right to a speedy trial under the Sixth Amendment.  Jackson filed a reply.

A.    Excessive Pre-Indictment Delay (Fifth Amendment)

Typically, the applicable statute of limitations determines whether a defendant in a criminal case was timely charged with an offense.  See United States v. Bater, 594 F.3d 51, 54 (2010); see also United States v. Picciandra, 788 F.2d 39, 42 (1st Cir. 1986) ("The Supreme Court has held that a prosecutor is not obliged to file charges as soon as probable cause exists.") (citing United States v. Lovasco, 431 U.S. 783, 791 (1977)). Jackson does not dispute that the government indicted him before the five-year statute of limitations expired for the offenses on which he was indicted.  See 18 U.S.C. § 3282(a) ("Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.").

Nevertheless, an indictment brought within the applicable limitations period can "sometimes, albeit rarely," be excessively delayed so as to violate the defendant's right to

3

due process under the Fifth Amendment.  Bater, 594 F.3d at 54.
The defendant must show "both that the delay caused substantial
prejudice to his right to a fair trial and that the government
intentionally delayed indictment to gain a tactical advantage."
Id. (emphases, alterations, and quotation marks omitted).
Furthermore, the government's intentional delay must generally
be purposeful toward the substantial prejudice that the delay
caused.  See id. ("Here, Bater has no proof whatever that the
prosecutors' delay was in any respect prompted by a wish to
deprive Bater of Phillips' help, if help it were."); see also
United States v. Ramos-Gonzalez, 775 F.3d 483, 491 (1st Cir.
2015) (noting that "there may be instances when prosecutorial
delay will be sufficiently egregious to support a due process
violation even absent tactical purpose . . . .").  Jackson
contends that the pre-indictment delay prejudiced his right to a
fair trial because three witnesses who would have testified
favorably toward his defense are unavailable and because there
was exculpatory evidence on his cell phones that is now
unavailable.

    1.  Witnesses

Jackson argues that witnesses Daniel Boland, Reade Scotti,
and Ismael Santana are now unavailable because of the

4

government's delay.  The government argues that these witnesses would not have provided exculpatory testimony and that Jackson has not shown that the government delayed indictment for the purpose of depriving Jackson of these witnesses.  The government asserts that the delay in indictment in this case was because the government wanted to use Angelina Keenan as a witness against Jackson and therefore secured a guilty plea from her before indicting Jackson.

The first witness identified by Jackson, Daniel Boland, died in September 2017.  According to Jackson, Boland would have testified about "how Miss Keenan pre-arranged the sale of the firearms for a profit, in which, me and Miss Keenan split at the conclusion of the sale."  Doc. 89 at 7.[3]  Jackson, however, does show that testimony indicating that he was involved in the trafficking and sale of firearms exculpates him or is somehow favorable to his defense.  Furthermore, Jackson has shown no evidence that Boland's unfortunate death, which Jackson says occurred just one day after Boland's release from incarceration, was foreseeable to the government.  See United States v. Miller, 484 F. Supp. 2d 154, 157 (D. Me. 2007) (rejecting argument that

---

[3] Jackson also suggests that another witness, Monica Osorio, was Boland's girlfriend and can testify "to the minor details provided by Mr. Boland about the night of December 27th, 2016 . . . ."  Id.

5

the government engaged in tactical pre-indictment delay when defense witness died of illness because "[t]he Government had no notice or reason to believe that" the witness was ill).

The second witness, Reade Scotti, was Jackson's roommate and "a witness to Miss Keenan's activities of selling guns." Doc. 89 at 8. Jackson contends that Scotti would testify that Jackson "would find the potential buyers and [Keenan] would purchase the requested gun for them." Id. Jackson notes that Scotti was "close to being a customer but the sale never took place, but he was nevertheless present on the night[s] of December 23rd and 27th, 2016 when Keenan sold the Ruger pistol purchased from Affordable Firearms in Pelham, New Hampshire." Id. As with Boland, Jackson's characterization of Scotti's testimony is more inculpatory than exculpatory. Jackson also does not show that Scotti's absence has been caused by tactical delay by the government in indicting him because he asserts that he only lost contact with Scotti after his arrest and indictment, not during the time period when he could have been indicted but was not.

According to Jackson, the third witness, Ismael Santana, would testify that Keenan "sold his friend all three of the guns purchased on the December 23rd, and 27th dates." Doc. 89 at 9. Like Scotti, Jackson states that Santana cannot testify because

he has lost contact with him, and he does not know where Santana is anymore.  As with Scotti, Jackson does not show that Santana's absence was caused by pre-indictment tactical delay by the government.  Jackson states that he lost contact with Santana "[t]hroughout the duration of the investigation."  Doc. 89 at 9.  Jackson, however, does not show that the government could have foreseen Jackson's loss of contact with Santana or otherwise delayed indicting him so that Santana would be unavailable as a witness.

### 2.    Cell Phone Evidence

Jackson also contends that there was exculpatory evidence on cell phones that investigators seized from him in 2016. Jackson asserts that his cell phones were tampered with prior to his indictment.  In support, Jackson states that a video shows an ATF agent using and extracting information from one of the phones during an interview with Keenan.  The government responds that Jackson was provided all of the data from his phone through the government's initial discovery disclosures.

Even taking Jackson's characterization of the video as true, the agent's use of information from the cell phone during an interview with a suspect or witness does not show that anything from the cell phones has been lost due to the pre-

7

indictment delay.  In his reply, Jackson adds that, due to the passage of time, he cannot remember the names of individuals connected to certain phone numbers in his phone book.  There is no evidence, however, that the government delayed indictment so as to minimize Jackson's memory of the names of individuals connected to certain numbers in his phone book.

   B.   Speedy Trial (Sixth Amendment)

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ."  U.S. Const. Amend. VI.  Jackson contends that his Sixth Amendment right to a speedy trial has been violated.[4]  In assessing a claim that an indictment should be dismissed based on violation of the defendant's right to a speedy trial under the Sixth Amendment, the court weighs four factors: the length of any delay; the reason for the delay; the defendant's assertion of the right to a speedy trial; and whether the defendant has been prejudiced by the delay.  Barker v. Wingo, 407 U.S. 514, 530-33 (1972); United States v. Carpenter, 781 F.3d 599, 608 (1st Cir. 2015).

---

[4] In his reply, Jackson acknowledges that there has been no violation of the Speedy Trial Act and asserts that his claim is limited to the Sixth Amendment's guarantees.

8

### 1. Length of Delay

The first factor weighs in Jackson's favor because he has not been tried within twelve months of his indictment.  See United States v. Worthy, 772 F.3d 43, 48 (1st Cir. 2014); see also United States v. MacDonald, 456 U.S. 1, 6-7 (1982) (stating that the constitutional right to a speedy trial under the Sixth Amendment attaches on arrest or indictment, whichever occurs first).  The time elapsed from Jackson's August 2018 indictment to the currently set date for his trial will be approximately twenty-two months.  Therefore, further inquiry into the remaining three factors is necessary.  See Worthy, 772 F.3d at 48 ("Worthy's threshold showing of delay was thus sufficient to 'trigger speedy trial analysis' . . . .").

### 2. Reason for Delay

The reason for the delay in bringing the defendant to trial is the "focal inquiry" of the speedy trial analysis.  Id. at 49. For this factor to fully weigh in the defendant's favor, the delay must have been caused by prosecutorial bad faith.  See id. (affirming district court's denial of motion to dismiss based on pretrial delay under the Sixth Amendment in part because delay "during the pendency of codefendants' plea agreements resulted not from prosecutorial bad faith, but from the procedures of the

9

clerk's office").  On the other hand, delay caused by the defendant's filing of pretrial motions cuts against finding a violation of the Sixth Amendment's speedy trial guarantee.  Id.

While Jackson may not be responsible for the six-month delay between his indictment his arrest,[5] virtually all of the sixteen-month delay between his arrest and the currently set trial date has been the result of his filing of pretrial motions.  Most notably, Jackson has pursued several motions for new counsel, which have been the main hindrance to the timely procession of this case.

For example, the case was set for trial in December 2019. In November 2019, however, Jackson sought to terminate counsel and proceed pro se, which required the court to hold a hearing, delay resolution of a motion to suppress that had been filed by appointed counsel, and delay trial.  Then, after Jackson was permitted to proceed pro se, he withdrew the motion to suppress that had been filed by counsel, and he has on several occasions requested more time to file another one.  The court has granted Jackson's requests for more time to file his motion to suppress,

---

[5] Jackson contends that he did not know that a warrant had been issued for his arrest and that the government knew where he lived but did not make any effort to arrest him during the six-month period after his indictment and before his arrest. Jackson states that he was arrested only after he attempted to retrieve seized belongings from the ATF.

10

and Jackson has acknowledged the delay that his requests have caused in bringing his case to trial. While it is generally Jackson's right to file the pretrial motions that he desires, his filing of them means that, in this case, he cannot place the blame for the pretrial delay on the government, which states that it was prepared to proceed to trial in December 2019.

### 3. Assertion of Right to Speedy Trial

Jackson has not been consistent in asserting his right to a speedy trial. Indeed, the current motion is the first time that Jackson has indicated to the court a desire to assert his speedy trial rights as opposed to delaying trial. Jackson, when questioned by the court, waived his speedy trial rights to have more time to prepare his defense on multiple occasions. As recently as March 9, 2020, just one day before he filed the present motion to dismiss, Jackson orally waived his speedy trial rights and agreed to an extension of both the deadline to file a motion to suppress and the trial date. See doc. 88.

Jackson contends that, on one occasion, he did not, in fact, waive his speedy trial rights as he told his first counsel, Attorney Matthew Stachowske, not to do so. Jackson asserts that Attorney Stachowske "sought and obtained a 90 day continuance that I did not approve of, and this could be

verified through records where my signature was not on the waiver he sent me authorizing a waiver of such right." Doc. 89 at 15. Jackson appears to be referring to a May 31, 2019, motion to continue trial filed by Attorney Stachowske, which was not accompanied by a written waiver of a Jackson's speedy trial right. Doc. 15.

The court granted that motion to continue the same day, noting that the case was one year old, but finding that the ends of justice outweighed the interest of the public and the defendant in a speedy trial. Doc. 16. The court directed Jackson to file a waiver of speedy trial rights within ten days of the order. The waiver, however, was never filed.

Instead, on June 20, 2019, Jackson filed a motion seeking to discharge Attorney Stachowske. The court ultimately granted that motion and appointed new counsel for Jackson, who soon moved to continue trial and submitted a written waiver of speedy trial rights signed by Jackson. Doc. 22. At most, there was a brief delay between May 31 and June 20, 2019, that was not acquiesced in by Jackson. Even so, the delay was not the government's fault, and Jackson fails to show that the court should disregard his numerous other waivers of his speedy trial rights. E.g., doc. nos. 12, 22, 46, and 86.

    4.  Prejudice

    Lastly, Jackson has not shown that he has suffered any prejudice from the delay in bringing him to trial rising to the level of a constitutional violation.  Jackson argues that his lengthy pretrial detention has harmed preparation of his defense.  However, the First Circuit has held that pretrial detentions of less than nineteen months and twenty-three months were insufficient, alone, to show a constitutional level of prejudice.  Worthy, 772 F.3d at 49 (twenty-three month pretrial detention); United States v. Munoz-Amado, 182 F.3d 57, 63 (1st Cir. 1999) (nineteen month pretrial detention).  Here, Jackson will have been detained for approximately sixteen of the twenty-two months between his indictment and the June 2020 trial date.  Furthermore, as noted, nearly all of the pretrial delays have come as a direct result of Jackson's request, suggesting that the delay in bringing him to trial has served to aid his defense, not to harm it.

    Jackson argues that, as a result of the delays, the evidence in the case has been reduced "to primarily testimonial evidence," pitting his word against that of his accusers.  Doc. 89 at 16.  Jackson's characterization of the evidence in this case, however, is contradicted by the government's

13

representation of the evidence, which includes, according to the government, surveillance footage of Jackson handling firearms.

Weighing the four factors, Jackson has not shown that his Sixth Amendment right to a speedy trial has been violated. While Jackson makes a threshold showing of a pretrial delay of more than twelve months, the vast majority of that delay has been either acquiesced in by Jackson or has been a direct result of Jackson's filing of pretrial motions. See Worthy, 772 F.3d at 49-50. Dismissal of the indictment on the ground of excessive pretrial delay in violation of the Sixth Amendment would be inappropriate.


## Conclusion

For the foregoing reasons, Jackson's motion to dismiss (doc. no. 89) is denied.

SO ORDERED.



_____
Joseph A. DiClerico, Jr.
United States District Judge

April 13, 2020

cc:   Leveneur Jackson, pro se
      Seth R. Aframe, Esq.
      Bruce E. Kenna, Esq.
      Anna Z. Krasinski, Esq.
      U.S. Probation
      U.S. Marshal