**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

PHILIP LAYFIELD, AKA Philip Samuel Pesin,

*Defendant-Appellant*.

Nos. 22-50047
22-50133

D.C. No.
2:18-cr-00124-MWF-1

OPINION

Appeal from the United States District Court
for the Central District of California
Michael W. Fitzgerald, District Judge, Presiding

Argued and Submitted February 16, 2024
Pasadena, California

Filed March 7, 2024

Before:  Richard C. Tallman, Sandra S. Ikuta, and John B.
Owens, Circuit Judges.

Opinion by Judge Owens

## SUMMARY[*]

### Criminal Law

Affirming Philip James Layfield's convictions for wire fraud, mail fraud, and various tax offenses, the panel rejected Layfield's argument that that the twenty-one days it took the U.S. Marshals Service to transport him from the District of New Jersey (where agents arrested him) to the Central District of California (CDCA) (where the grand jury indicted him) should have triggered a Speedy Trial Act violation.

Layfield argued that, properly accounting for the transportation delay, the government did not bring him to trial within the seventy-day limit set forth in 18 U.S.C. § 3161(c)(1).

Section 3161(c)(1) provides that the seventy-day clock is triggered by the public filing of the indictment or the first appearance before a judge of the court in which the charge is pending, whichever date last occurs.

Layfield's first appearance before a judge in the CDCA, which occurred fourteen days after the public filing of his indictment, triggered the seventy-day clock. The panel held that a plain reading of § 3161(c)(1) dictates that the twenty-one-day delay between Layfield's detention in New Jersey and his first appearance before a judge in the CDCA was immaterial to the Speedy Trial Act analysis.

The panel rejected Layfield's argument that because he was detained, a different provision becomes

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

relevant. Section 3161(h)(1)(F) provides that, in calculating the seventy days, a "delay resulting from transportation of any defendant from another district . . . in excess of ten days . . . shall be presumed to be unreasonable." The panel explained that this provision applies to prisoners travelling between jurisdictions for court proceedings once the seventy-day clock has started—not to a pre-indictment or pre-appearance transfer.

The panel addressed Layfield's other challenges to some of his convictions in a concurrently filed memorandum disposition.

## COUNSEL

Katherine K. Windsor (argued), Law Office of Katherine Kimball Windsor, Pasadena, California, for Defendant-Appellant.

Mark Aveis (argued), Ian V. Yanniello, and Carolyn S. Small, Assistant United States Attorneys; Bram M. Alden, Assistant United States Attorney, Criminal Appeals Section Chief; E. Martin Estrada, United States Attorney; United States Attorney's Office, Central District of California, Los Angeles, California; for Plaintiff-Appellee.

**OPINION**

OWENS, Circuit Judge:

Philip James Layfield appeals from his convictions for wire fraud, mail fraud, and various tax offenses. He argues that the twenty-one days it took the U.S. Marshals Service to transport him from the District of New Jersey (where agents arrested him) to the Central District of California (where the grand jury indicted him) should have triggered a Speedy Trial Act violation and requires this court to overturn all of his convictions. Consistent with our own precedent and that of the First and Second Circuits, we reject his challenge and affirm.[1]

## I. BACKGROUND

### A. The Crime and Court Appearances

To make a long story short, Layfield was a crooked plaintiff's lawyer and certified public accountant with operations in Los Angeles and elsewhere. He routinely (and illegally) used client settlements to cover his personal expenses as well as his firm's operating expenses to the tune of millions of dollars commingled and stolen, and eventually moved to Costa Rica—at which point his client trust account was down to $134.

Speedy Trial Act cases often turn on specific dates, so the key events are listed in bullet form below for ease of the reader.

---

[1] Layfield also individually challenges some of his wire fraud and tax convictions. We address those claims in a concurrently filed memorandum disposition, in which we also affirm.

- February 23, 2018: A complaint in the Central District of California (CDCA) charged Layfield with one count of mail fraud for defrauding a client and misusing the client's settlement funds.

- February 24, 2018: Agents arrested Layfield on the Los Angeles arrest warrant at the Newark International Airport while he was boarding a flight to Costa Rica.

- February 26, 2018: Layfield made his first appearance in the District of New Jersey, and the magistrate judge continued his bail hearing.

- March 2, 2018: The magistrate judge denied bail and ordered Layfield removed to the CDCA.

- March 9, 2018: A CDCA grand jury returned an indictment against Layfield.[2]

- March 23, 2018: Layfield made his first appearance before a judge in the CDCA.

## B. The District Court Rejected Layfield's Speedy Trial Act Argument

Before the district court Layfield contended that the transportation delay between his detention in the District of New Jersey and his initial appearance in the CDCA should have counted towards the seventy-day limit of the Speedy Trial Act. 18 U.S.C. § 3161(c)(1) (providing that a trial "shall commence within seventy days from" certain specified dates). Layfield argued that, properly accounting for that transportation delay, the government did not bring him to trial within the seventy-day limit and, therefore,

---

[2] In November 2018, a grand jury returned a twenty-eight-count superseding indictment.

dismissal of the indictment was required. Ruling from the bench, the district court relied on cases cited by the government—*United States v. Palomba*, 31 F.3d 1456 (9th Cir. 1994), and *United States v. Munoz-Amado*, 182 F.3d 57 (1st Cir. 1999), among others. The district court explained that there are "no cases that say that the remedy for this violation is to shove that time into the 70 days." Layfield's argument, moreover, ignored the "universal understanding . . . of when the 70 days began to run," which "is supported by Ninth Circuit law," holding that the triggering date is the date of the defendant's initial appearance in the charging district.

## II.   DISCUSSION

### A.  Standard of Review and Jurisdiction

We have jurisdiction under 28 U.S.C. § 1291. We review a district court's interpretation of the Speedy Trial Act de novo. *United States v. Orozco-Barron*, 72 F.4th 945, 954 (9th Cir. 2023).

### B.  There Was No Speedy Trial Act Violation

The Speedy Trial Act of 1974, 18 U.S.C. § 3161 *et seq.*, provides:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the

> court in which such charge is pending, whichever date last occurs.

§ 3161(c)(1). In calculating that seventy-day period, the Speedy Trial Act excludes certain "periods of delay" listed in § 3161(h). "If a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h)," then the indictment must be dismissed. *Id.* § 3162(a)(2).

Under the clear language of § 3161(c)(1), only two events could trigger Layfield's seventy-day speedy trial clock: (1) the March 9, 2018 public filing of the indictment or (2) his March 23, 2018 first appearance before a judge in the CDCA. And because his CDCA appearance was the latter date, it triggered the seventy-day clock. This plain reading of § 3161(c)(1) dictates that the twenty-one-day delay between his detention in New Jersey and his first appearance in the CDCA was immaterial to the Speedy Trial Act analysis.

On multiple occasions, the Ninth Circuit has confirmed that this straightforward interpretation of § 3161(c)(1) is correct. For example, in *Palomba*, the defendant argued that his initial appearance in the CDCA should have triggered the seventy-day period under the Speedy Trial Act, even though he faced charges in the Northern District of California. 31 F.3d at 1462. We rejected that argument, as it "overlooks the fact that the 70-day period commences only on the date when the defendant is brought before a 'judicial officer of the court *in which the matter is pending.*'" *Id.* (quoting § 3161(c)); *see also United States v. Wilson*, 720 F.2d 608, 609 (9th Cir. 1983) (rejecting identical argument as "difficult to square with the language of Section 3161(c)(1)").

Layfield does not fight the clear holdings of *Palomba* and *Wilson*.  Instead, he contends that those cases featured defendants out on bond, and not detained like he was after his initial New Jersey appearance.  Because he was detained, the argument goes, a different provision becomes relevant— § 3161(h)(1)(F), which provides that, in calculating the seventy days, a "delay resulting from transportation of any defendant from another district . . . in excess of ten days . . . shall be presumed to be unreasonable."[3]  And because the delay between his detention in New Jersey and his first appearance in the CDCA was twenty-one days—exceeding the ten days referenced above—presumably eleven of those days should count against the seventy-day period.[4]

This is not a new argument, nor is it a winning one.  For example, in *United States v. Barnes*, 159 F.3d 4, 10 (1st Cir. 1998), the First Circuit rejected an identical contention: "The pre-indictment or pre-appearance transfer of a defendant is not explicitly listed as one of the only two triggering events in section 3161(c)(1), and we decline to read into that provision what was not expressly included by Congress. Accordingly, . . . [the delay in transfer] does not start the 70-day speedy trial clock."  *See also Munoz-Amado*, 182 F.3d at 60 (applying *Barnes* to a defendant held in custody during transport to the charging district); *United States v. Lynch*, 726 F.3d 346, 353 (2nd Cir. 2013) (rejecting the view that "the limitation on the exclusion of travel time of a defendant

---

[3] Prior to 2008, § 3161(h)(1)(F) was numbered as (h)(1)(H).  *See* Judicial Administration and Technical Amendments Act of 2008, Pub. L. No. 110-406, § 13, 122 Stat. 4291, 4294.

[4] In *United States v. Greene*, 783 F.2d 1364, 1368 (9th Cir. 1986), we appear to have faced this very issue—the interaction between § 3161(c)(1) and (h)(1)(F) [then (H)]—but we ultimately did not need to resolve it.

in § 3161(h)(1)(F) applies to the seventy-day period of § 3161(c)(1)"); *cf. United States v. Wickham*, 30 F.3d 1252, 1254-55 (9th Cir. 1994) (adhering to the statute's "plain meaning" in rejecting the argument that § 3161(i) "replace[s] section 3161(c)(1) when a defendant withdraws a guilty plea").

According to Layfield, this interpretation effectively reads § 3161(h)(1)(F) out of the criminal code. Not so. That subsection readily applies when a prisoner, after § 3161(c)(1) is triggered, is transferred between districts for separate trial proceedings. For example, the defendant may be subject to detainers lodged by other districts where charges are also pending against them. The first ten days of that travel are deemed reasonable. Days exceeding those ten are not. *See Barnes*, 159 F.3d at 10 (describing § 3161(h)(1)(F) [then (H)] as "a tolling provision, not one that sets forth the events that trigger the start of the 70-day period"). Courts apply this provision to prisoners travelling between different jurisdictions for court proceedings once the seventy-day clock has started—not to defendants in Layfield's procedural posture. *See, e.g.*, *United States v. Nash*, 946 F.2d 679, 680 (9th Cir. 1991) (applying section (h)(1)(F) [then (H)] to transportation between state institution and federal custody); *United States v. Collins*, 90 F.3d 1420, 1427 (9th Cir. 1996) (applying section (h)(1)(F) [then (H)] to travel to and from state court proceedings); *United States v. Robertson*, 810 F.2d 254, 259-60 (D.C. Cir. 1987) (applying section (h)(1)(F) [then (H)] to travel from Wisconsin to the District of Columbia for trial and back). That section (h)(1)(F) does not apply to Layfield does not render it meaningless to others.

Layfield cites one out-of-circuit district court case— *United States v. Thompson*, No. 6:06-CR-228-ORL-18KRS,

2007 WL 1222573, at *1-2 (M.D. Fla. Apr. 24, 2007)—to buttress his argument. The judge in that case, apparently frustrated that the government made no effort to explain a three-month delay in transporting the defendant, ruled that the speedy trial clock began with the order of removal. *Id.* The court neither cited nor distinguished any authority but reasoned that "[t]o hold otherwise would render the relevant tolling provision, § 3161(h)(1)([F]), largely useless in situations such as this one, where the Order of Removal . . . was either ignored or forgotten about." *Id.* at *2. *Thompson* holds limited, if any, value: no court has ever relied on it, and, by contrast, Layfield's order of removal was not ignored.

Layfield also argues that the prevailing reading of § 3161(c)(1) means that a defendant could spend months or even years awaiting transport to the charging district without any avenue of relief. Again, not so. The Supreme Court outlined the procedure for challenging pretrial delay more than fifty years ago in *Barker v. Wingo*, 407 U.S. 514, 530 (1972) (explaining that speedy trial cases require a balancing test applied "on an ad hoc basis"). And while the facts of this case do not merit such relief, the more egregious hypothetical scenarios that Layfield outlines might.

## III.  CONCLUSION

Based on the clear language of § 3161(c)(1) and consistent with our own precedent and that of the First and Second Circuits, we reject Layfield's Speedy Trial Act challenge.

**AFFIRMED.**